CASE 9—PETITION ORDINARY—SEPT. 7.

# United Society of Shakers v. Underwood, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. A JUDGMENT AGAINST ONE CO-TRESPASSER WILL NOT *per se* BAR AN ACTION AGAINST ANOTHER for the same or a different asportation or conversion of the same property; and to make out a bar in such case it is necessary to show not only the first judgment, but also that it has been fully satisfied or released. The judgment alone does not vest in the defendant the title to the property converted. (Elliott v. Porter, 5 Dana, 299; Lovejoy v. Murray, 3 Wallace, 1.)

2. ELECTION BY THE PLAINTIFF.—A plaintiff may maintain separate actions and recover separate judgments against joint trespassers, and may elect to take the largest sum assessed, or to proceed against the solvent defendants, or where no one of them is able or can be compelled to pay the whole of the judgment rendered against him may accept part satisfaction from one and still look to the others for such balance as may be necessary to give him full legal compensation for the wrong suffered; but ordinarily when he has made his election he will be concluded by it.

3. WHERE THE INJURED PARTY SUES ONE OF SEVERAL WRONG-DOERS AND RECOVERS A JUDGMENT, which he elects to enforce and which is in part satisfied, *he is estopped in a subsequent action* against a different defendant for the same cause to claim a greater sum in the way of damages than was adjudged to him in the first action.

4. PLAINTIFF MAY DEFER HIS ELECTION by declining to enforce his

judgment, leaving the question of amount to which he is entitled an open one, until he sues and recovers against all who are liable to him, and then elect which judgment he will enforce; or he may sue upon his original cause of action and compel the defendant to rely, by plea or as matter of evidence, upon the first judgment and his election to enforce it, thereby estopping each party from questioning the correctness of that judgment.

5. A JUDGMENT AGAINST A CO-TRESPASSER IN A BANKRUPT COURT, as pleaded in this case, is conclusive upon both plaintiffs and defendants as to the amount of damages sustained by the plaintiffs.

In a suit for the tortious conversion of property the defendant pleaded in bar the judgment of a bankrupt court in favor of the plaintiffs against a co-trespasser for the same conversion, and which had in the greater part been satisfied. *Held*, that the judgment of the bankrupt court against the co-trespasser is conclusive upon both parties in the second suit as to the amount of damages.

6. A PEREMPTORY INSTRUCTION may be asked on the opposing party's evidence, by assuming it as true and every fact it tends to prove. But such motion can not be made on the party's own evidence alone, or on his own mingled with or added to that of the opposite party, unless his own evidence is composed of records or uncontested official documents or writings. (Dallam v. Handley, 2 Mar. 424.)

7. *A peremptory instruction is not authorized where* the testimony on both sides is of the same kind and tendency, and where the jury must compare and weigh it, and where they can give credit or refuse to give credit to either a part or the whole of the testimony on each side. (Thompson v. Thompson, 17 B. Mon. 29.)

8. It is not enough that the proof is such that the court may feel that possibly a new trial should be awarded in case of a verdict for the plaintiff, on the ground that it would be against the weight of the evidence.

*If there be evidence conducing to show a right of recovery* the plaintiff may insist upon a verdict.

JOHN MASON BROWN,  ⎫
M. C. JOHNSON,  . . ⎬ . . . . . . . For Appellants,
THOS. H. HINES, . . ⎭

CITED

*When the granting of an instruction, as in the case of a non-suit, will be adjudged error:*

1 Bush, 109, Shay v. Richmond Turnpike Co.
9 Wall. 197 and 248, Hickman v. Jones, and Barney v. Schmeider.

2 Bush, 140, Stephens v. Brooks.

8 Wall. 268, Drakely v. Gregg.

17 B. Mon. 28, Thompson v. Thompson.

*Former recovery and pleas in bar:*

Bigelow on Estoppel, pages 95 and 96.

Freeman on Judgments, section 163.

Morse on Banking, pp. 148–50.

4 How. 467, Aspden v. Nixon.

6 How. 44, Stacey v. Thrasher.

5 Wall. 590, Packet Co. v. Sickles.

2 Marsh. 304–609, Robinson v. Sutton, and Talbot v. David.

3 Wall. 1, Lovejoy v. Murray.

9 Cush. 348, Gilbert v. Thompson.

7 Penn. Goundie v. North Hampton Water Co.

1 Marsh. 527, Allin v. Hall.

8 B. Mon. 428, Peak v. Bull.

2 Duvall, 254, Julian v. Pilcher.

2 B. Mon. 257, Black v. Lackey.

1 Chitty's Pleading, p. 418.

1 Saunders's Pleading, pp. 91, 92.

13 How. 458, Hill v. Tucker.

18 How. 17, McLean v. Meek.

24 How. 333, Packet Co. v. Sickles.

19 Pick. 458, Sprague v. Waite.

14 N. Y. 332, Castle v. Noyes.

19 N. Y. 110, Mersereau v. Pearsall.

50 Barb. 397, York v. Steel.

53 N. Y. 67, Atlantic Dock Co. v. Mayor, &c., New York City.

25 N. Y. 616, Campbell v. Consalus.

38 N. Y. 65, People v. Johnson.

44 N. Y. 1, Woodgate v. Fleet.

13 Meeson & Welsby, Carter v. James.

J. R. UNDERWOOD,

T. N. & D. W. LINDSEY, } . . . . . . . For Appellees,

CRADDOCK & TRABUE,

CITED

21 How. 356, U. S. v. The City Bank of Columbus.

3 Wall. 1, Lovejoy v. Murray.

4 Met. 330, Buckles v. Lambert.

Hilliard on Torts, sections 43, 44, page 492.

Bacon's Abridgment, title "Trover," B.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

Counsel have argued this case upon the hypothesis that the appellees, if liable at all, are to be held to account for all the bonds sold by Calvert, the cashier of the bank, whether their proceeds were or not applied to the uses and purposes of that institution. Such is not the case.

The gist of the action is that the *bank*, through its officers, fraudulently converted to *its* use and emolument certain of the appellants' bonds, which it held on special deposit, and that the conversion took place under such circumstances as to render the appellees (the president and directors of the bank) answerable therefor.

In the opinion of this court* rendered upon a former appeal in this cause it was said: "But the liability of the bank does not depend alone upon the averment of want of care and fidelity upon the part of the directors. It is specifically charged that the deposits were sold by its officers and the proceeds thereof converted to its use and emolument with the knowledge of the directors." And again: "These appellants allege that their bonds were sold by the officers of the bank and the proceeds paid out in the satisfaction of claims against it and in the payment of dividends to its stockholders; and that of all this appellees had notice."

"Having notice, it was their duty, and they had full power in the premises, to prevent the sale. Failing in this, their subsequent action in directing the proceeds, or some portion thereof, to be paid out in the shape of dividends to the stockholders, including themselves, was a ratification of the conversion which they had theretofore wrongfully permitted."

The petition was held to be good "upon the ground that if the officers of the bank sold the special deposits and used the proceeds in the business of and for the uses and purposes of the bank, and the proceeds were so used through the active agency of the directors, then they are personally liable by reason

*9 Bush. 609.

of their participation in the tort, and they can not escape lia-
bility, because they were not aware that they were wrongfully
using the proceeds of a depositor's property, when this want
of information was the result of their willful inattention to
and gross negligence in the discharge of their official duties."
(Ray's adm'rs v. Bank of Kentucky, 10 Bush, 355.)

We regard it as plain that appellants' petition does not
authorize a recovery for a greater sum than the value of such
of their bonds on special deposit as were sold and appropriated
to the uses and purposes of the bank.

It is proper before proceeding further to consider the effect
of the plea in bar, based upon the adjudication in bankruptcy
of appellants' claim against the Bank of Bowling Green.   It
is averred by Underwood, one of the appellees, that after the
Bank of Bowling Green was declared a bankrupt by the Dis-
trict Court of the United States for the district of Kentucky,
the appellants herein appeared in that court and set up their
claim against said bank for the appropriation and conversion
of the identical bonds in controversy in this action, and that
they succeeded in said district court in obtaining judgment
against the assignee of the bank for the sum of $35,734.21, for
and on account of said bonds, and that a large portion of said
judgment has been paid by the assignee.   Afterward, by a
joint amended answer, all the appellees set up the same facts
and charged that the sum paid on the judgment by the assignee
amounted to $26,875.

Before the filing of this amended answer appellants de-
murred to so much of Underwood's answer as set up said recov-
ery and payment. As the demurrer was general in its nature, and
as the plea was undoubtedly good to the extent that it averred
payment or partial satisfaction of the claim, it was properly
overruled.   But as appellees now insist that the plea presents
a complete defense to the action, and as appellants claim that
the judge presiding at the trial in the court below was of that

opinion, and in consequence thereof gave the peremptory instruction to the jury to find for the appellees, it is proper that we shall consider it in that view.

This court, in the case of Elliott v. Porter (5 Dana, 299), expressly dissented from the doctrine of the English cases commencing with Brown v. Wotton (Cro. Jac. 73), and stated the rule to be that a judgment against one co-trespasser or wrong-doer will not *per se* bar a subsequent action against a different defendant for the same, or a different asportation or conversion of the same property, and that in such a case to make out a bar it is necessary to show not only the first judgment, but also that it has been satisfied or released. The rule as thus stated has never been questioned in this state. It is in harmony with the decided weight of American authority, and its enforcement is calculated to secure the ends of justice, and is demanded by sound public policy.

In the late case of Lovejoy v. Murray (3 Wallace, 1) the Supreme Court of the United States carried the doctrine even further, and held, as we think correctly, that a judgment for a wrongful conversion of property against one co-trespasser, even when partly satisfied, will not bar an action against another. In the last-named case, as in the leading cases of Elliott v. Porter and Sheldon v. Kibbe (3 Conn. 214), the doctrine that the judgment alone vests the title of the property converted in the defendant is repudiated as not sustained by authority, and as incapable of being maintained on principle.

But in the case before us for adjudication we have another, and, it seems, an unsettled question.

When a party sues one of several wrong-doers for a conversion or destruction of his property and recovers a judgment which he elects to enforce, and which is in part satisfied, is he not estopped in a subsequent action against a different defendant to claim a greater sum in the way of damages than was adjudged to him in the first action?

In the case of Elliott v. Porter the court said: "A few old cases might be understood as assuming the true doctrine to be that the title passes by operation of law in consequence of the judgment for damages. Some more modern decisions, *contra*, require satisfaction of the judgment, and others the issuing of an execution upon it as necessary for making the initiate election to take the assessed value in lieu of the property itself perfect and irrevocable." And further: "But there can be but one satisfaction for the same wrong. When several judgments have been obtained on the same cause of action the plaintiff must elect which he will enforce, and when he shall have once elected perhaps he may be enjoined from proceeding on another."

In the case of Knott v. Cunningham (2 Sneed, 210) the Supreme Court of Tennessee says: "The more reasonable doctrine, on the other hand, is, that as each of the wrong-doers is liable for his own act, separate actions may be brought at the same time, or successively, against each of the several trespassers, in each of which the plaintiff may proceed to judgment. But as he can claim or enforce only one satisfaction for the same injury, he must elect against which of the several he will proceed to execution for the satisfaction of his damages. If the several assessments vary in amount he may elect to take the larger sum, or if the defendants be not all solvent he may elect to proceed against the solvent party; and such election followed by actual satisfaction of that particular judgment will preclude the plaintiff from proceeding against either of the other defendants upon the judgments recovered against them, except for the *costs* in the respective cases, which he may enforce the collection of by execution."

In Lovejoy v. Murray the Supreme Court says: "It is said that the judgment represents the price of the property, and as the plaintiff has the judgment, the defendant should have the property. But if the judgment does represent the price of the goods, does it follow that the defendant shall have the property

before he has paid the price? The payment of the price and the transfer of the property are, in the ordinary contract of sale, concurrent acts."

"But in all such cases what has the defendant in such second suit done to discharge himself from the obligation which the law imposes on him to make compensation? His obligation must remain, in morals and on principle, until he does this. The judgment against his co-trespassers does not affect him so as to release him on any equitable consideration. It may be said that neither does the satisfaction by his co-trespasser or a release to his co-trespasser do this. That is true; but when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages. But it is not easy to see how he is so affected until he has received full satisfaction, or that which the law must consider as such."

It thus appears that while the plaintiff may maintain separate actions and recover separate judgments against joint trespassers, and may elect to take the largest sum assessed, or to proceed against the solvent defendant, or in case no one of them is able or can be compelled to pay the whole of the judgment rendered against him, may accept part satisfaction from one and still look to the others for such balance as may be necessary to give him full legal compensation for the wrong suffered, yet, ordinarily, when he has made his election he will be concluded by it. The collection of one judgment extinguished the entire claim for damages, and when, as in this case, the injured party sues one of the wrong-doers, and has his damages assessed and then elects to enforce, and in fact does enforce his judgment until the estate of the defendant is wholly exhausted, he will not be allowed to say, in an action against another defendant, that the question as to amount of his damages is still an open one. It is true that his first judg-

ment, when rendered, was but a security for his original cause of action, and until it was made productive in satisfaction thereof it did not operate to change any other collateral concurrent remedy which he may have had. (Drake v. Mitchell, 3 East, 258.) But when he voluntarily availed himself of the advantages secured to him by that judgment, and made it productive to the part satisfaction of the claim, then it did operate to modify these collateral concurrent remedies.

His right of action against the other co-trespassers was not barred, nor his claim against them extinguished, by his voluntary action in the premises, but when he determined to enforce the first judgment, and did make it productive, he elected to accept the amount assessed as damages as full compensation for the injury of which he complains, and to treat said judgment and his other collateral concurrent remedies as securities for a claim, the amount of which had been rendered certain by judicial action. To this conclusion it may be objected that the wrong-doers who were not parties to the first action are not bound by the assessment of the value of the bonds converted. This is true; but in such a case the plaintiff may, if he choose, decline to enforce his first judgment, and leave the question of the amount to which he is entitled an open one until he sues and recovers against all who are liable to him, and then elects which judgment he will enforce. Or he may, as these appellants have done, sue upon his original cause of action, and compel the defendants to rely upon the first judgment and the election to enforce it, either by plea or as matter of evidence, and thereby secure a correlative advantage, which we will now consider.

The appellees insist that, because they were not parties to the proceeding in the bankrupt court, they have the right to show that the Bank of Bowling Green did not convert the bonds of appellants to an amount equal to the judgment rendered in said proceedings, nor in fact to any amount whatever.

To allow them to do so would be to give them the full advantage of so much of their plea as is favorable to them, and to leave such facts disclosed by it as operate to their prejudice open to controversy. This is contrary to the plainest principles of justice, and to the universally recognized rules of pleading. If the appellees choose to plead the judgment and the election of appellants to enforce it, and thereby estop them to show that they ought to recover in the action a greater sum than was adjudged to them against the bank in the proceedings in bankruptcy, they estop themselves to show that the recovery against the bank was far too great a sum, or that there should have been no recovery at all. The judgment as pleaded in this case concludes as well the appellees as the appellants, as to the conversion by the bank of the bonds, and as to the value of the bonds so converted. If such was not the case we would have a plea operating as an estoppel, without the essential element of mutuality. We would be holding the appellants to the disadvantageous consequences resulting from their election to enforce the judgment of the bankrupt court, and at the same time denying them the right to claim the compensation they elected to accept in satisfaction of their claim against all the parties answerable to them for the otherwise unascertained damages.

The mere statement of such a proposition is sufficient to demonstrate its fallacy.

In this connection we will notice the suggestion made by counsel for appellants, that the adjudication in bankruptcy is not sufficiently established by record evidence. It is made to appear by the legally attested transcript submitted to the jury that appellants claimed as against the assignee of the bank the value of the identical bonds described in their petition in this action, and that on the hearing before the register it was adjudged that their bonds to the value of $35,734.21 had been converted to the use of the bank, and their claim to that ex-

tent was allowed; and that this decision, upon being certified to the district court, was confirmed. The pleadings and orders exhibited show the nature of appellants' claim, and indicate clearly the questions of law and fact that were determined. Upon this determination all the parties in interest have acted, and the assignee has paid, and the appellants have accepted, more than two thirds of the amount adjudged to them.

We deem it also necessary to dispose of the objection based upon the alleged want of jurisdiction in the bankrupt court to afford relief in cases of tort, and the conclusion drawn therefrom that the proceedings in that court and the present action are essentially different as to the subject-matter involved.

It is not necessary to inquire as to the jurisdiction of courts of bankruptcy in this regard. It is sufficient to observe that the pleadings in the two causes show that the subject-matter of each of the two proceedings is the same, and that the bankrupt court, upon appellants' own motion, assumed to grant them relief, and that they have accepted the action of said court and reaped the benefits resulting to them from such action.

As the pleadings are now made up the only questions of fact to be determined by the jury are:

*First*—Did the appellees, or any of them, knowingly participate in the conversion of appellants' bonds by the Bank of Bowling Green; or did they, or any of them, so grossly neglect their duties as directors of the bank as to render themselves answerable for the conversion, even though they may have been actually ignorant of the fact that the bonds were being sold and the proceeds used in the business of the corporation?

*Second*—What portion of the assessment of damages made in the bankrupt proceeding has been satisfied by the assignee of the bankrupt corporation?

If either proposition embraced by the first question be

answered in the affirmative as to all or any of the appellees, the finding as to the second will make plain and palpable the judgment that ought to be rendered.

But appellees argue that in any view of the law as to the questions we have been considering the peremptory instruction to the jury to find for them was proper upon the ground that the evidence would not have sustained a verdict against all or any of them. The record shows that both the plaintiffs and defendants submitted evidence to the consideration of the jury, and the greater portion of that submitted by the appellees was oral.

The rule is, "that a party may move upon the evidence of his antagonist, assuming that evidence and every fact which it conduces to prove as true, and ask the court for a positive instruction. But he can not make such a motion on his own evidence alone, or on his own evidence mingled with or added to that of the opposite party, unless his own evidence is composed of record or uncontested official documents or writings." (Dallam v. Handley, 2 Mar. 424.) And a peremptory instruction is not authorized "where the testimony on both sides is of the same kind and tendency, and where the jury must compare and weigh it, and when they can give credit or refuse to give credit to either a part or the whole of the testimony on each side." (17 B. Mon. 29.)

Under the circumstances of this case the peremptory instruction could not be properly given unless the plaintiffs wholly failed by their own evidence, or by their own evidence considered in connection with that introduced by their antagonists, to make out their case against all or either of the appellees.

It is not enough that the proof is such that the court may feel that possibly a new trial should be awarded in case of a verdict in favor of the plaintiff on the ground that it would be against the weight of the evidence. If there be evidence con-

ducing to show a right of recovery the plaintiff may insist upon a verdict. (Stephens v. Brooks, 2 Bush, 137; and Shay v. The Turnpike Co., 1 Bush, 109.)

And this right is not without value. There has always been a limit in practice to the number of new trials that will be granted when different juries continue to find upon the same evidence contrary to the opinion of the judge presiding at the trials.

Without intimating an opinion as to the weight of the evidence, we are constrained to hold that it was not such as to authorize the giving of the peremptory instruction.

Judgment reversed, and cause remanded for a new trial upon principles consistent with this opinion.