## Louisville & Nashville Railroad Company v. Johnson's Administratrix.

(Decided December 18, 1914.)

### Appeal from Rockcastle Circuit Court.

1. Railroads—Yards—Care Required in Movement of Trains in.—In railroad yards where a number of employes are engaged in various kinds of labor, it is the duty of the railroad company, in the movement of its engines and cars, to anticipate the presence of these employes on the tracks and to move its cars and engines at a reasonable rate of speed, keep a lookout, and give warning of their approach. And in the movement of cuts of cars there should be on the front a person in a suitable position to warn employes of their presence.

2. Railroads—Yards—Duty to Employes in Movement of Trains.—In yards where the presence of employes on tracks must be anticipated, the duty of giving warning of the movement of trains, keeping a lookout, and running them at a reasonable rate of speed is for the protection of all employes in or about the yards whether they be engaged in work or standing or moving about, except that employes who are themselves charged with the duty of looking out for the movement of engines and cars are not entitled to this protection.

3. Railroads—Yards—Duty in Movement of Cars—Negligence.—Where an employe went in front of the north end of a standing car for the purpose of urinating, with his face toward the car, and a cut of cars was shunted in on the north end of the track on which he was standing, without any person on the forward end of the front car to give warning of its presence or to control its movements, the company was liable in damages for the death of the employe thus standing who was killed when the cut of cars came in collision with the car in front of which he was standing.

4. Railroads—Yards—Duty in Movement of Cars—When Company Not Negligent.—Where an employe, for the purpose of urinating,

goes between standing box cars, where he would be concealed from view of a brakeman in charge of a cut of cars moving on the same track, the company is not guilty of negligence if the employe is killed by the collision of the moving cars against the cars between which he was standing.

5. Railroads—Yards—Duty of Foreman to Protect Employes—Custom—Usage.—Where it is the custom or usage in a yard for employes to go between cars for the purpose of urinating, or they are so directed to do by their foreman, it is the duty of the foreman, if he knows that an employe is standing between the cars for the purpose indicated, and knows or by the exercise of ordinary care should know that a moving cut of cars is about to come in collision with the cars between which the employe is standing, to give the employe warning of the danger, and if he fails, the company will be liable.

6. Railroads—Employers' Liability Act—Instructions—Practice.—In administering the Employers' Liability Act in our courts the practice and procedure followed in the trial of common law actions generally should be observed in the trial of cases arising under this act, except in so far as the act itself modifies or changes them.

7. Railroads—Employers' Liability Act—Weight of Evidence—Instructions.—If the evidence in a case under the Employers' Liability Act would be sufficient to take the case to the jury and support a verdict if the suit had been brought under the State law, it would be sufficient to take the case to the jury and support the verdict if it was brought under the Federal law.

8. Evidence—Scintilla Rule—Peremptory Instruction.—The scintilla rule as applied in our practice does not mean that the case should be summitted to the jury when there is merely a "spark" or a "glimmer" of evidence, but means that when there is some evidence to support the plaintiff's case the court will not take the case from the jury, nor will the court, upon all the evidence, take the case from the jury merely because the evidence on one side may be stronger than the evidence on the other, but will, when there is conflict in the evidence, leave the disputed questions of fact to the jury.

9. Instructions—Peremptory—When Should Be Given.—If on the trial of a case it appears that, admitting the plaintiff's testimony and every fair inference that is reasonably deducible from it to be true, he has still failed to make out his case, the court should take the case from the jury.

10. Evidence—Speed of Trains—Condition of Rails.—It is competent to permit qualified witnesses to testify as to the speed at which cars were running and to describe the condition of the rails and tracks.

11. Evidence—Rules—Proof of—Practice in Obtaining.—Written rules, established by a railroad company for the conduct of its business, are the best evidence, and when a party to a suit desires to introduce as evidence these rules, or to prove their contents, he should give notice to the company that he wishes a copy of the

rules to use on the trial, and if the company fails to produce the rules, then their contents may be shown by qualified persons.

B. D. WARFIELD, J. W. ALCORN and J. W. BROWN for appellant.

C. C. WILLIAMS, L. W. BETHURUM and CHAPEZE & CRAW-FORD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In this suit, brought under the Federal Employers' Liability Act, by the administratrix of John H. Johnson, to recover damages for his death, alleged to have been caused by the negligence of the appellant railroad company, there was a verdict and judgment for five thousand dollars.

Several questions are raised by counsel for appellant that we do not think it necessary to consider in this opinion, as it is not probable they will occur on a retrial of the case, and so we will go at once to the principal grounds relied on for reversal, which are, that the trial court erred in refusing to direct a verdict for the railroad company, and in giving instructons.

The facts developed by the evidence, and about which there is no material dispute, are, in substance, these: The railroad company, at the time Johnson came to his death, was engaged in interstate commerce and Johnson was employed by it in such commerce. He was a section hand or track man, engaged with a crew of men in repairing the track in the yards of the railroad company at East Louisville, Ky. These yards are occupied by a large number of tracks, used by the company, some of the witnesses estimating the number of tracks at 25, and others at 50 or 75. These tracks were used for purposes connected with the movement of cars and the making up of trains; and there were employed by the company in and about these yards, in various duties concerning the repair of tracks and cars and the movement of trains, from three to five hundred men. The duties in which these men were engaged required them to be at different parts of the yard, and they were constantly crossing and recrossing these tracks.

On the day Johnson was killed he was engaged, as one of a crew of men, in repairing what is known as track number nine in these yards. Running parallel with track number nine was track number eight, and on track number eight, at or near the place where this

gang of men was working, there stood an open box car. Shortly before Johnson was killed it commenced raining, and the men went into this car to get out of the rain. After remaining in the car a short while, they were directed by the foreman to go to work, and all of them left the car for this purpose. Immediately after leaving the car, Johnson, while standing urinating on track number eight, was struck and killed by the movement of cars on this track.

At this point the evidence diverges and conflicts.

The evidence for the plaintiff tended to show that the foreman of the crew with which Johnson was working had directed or requested the men not to go to a closet, which was some three or four hundred yards distant, when they wanted to urinate, but to go behind or in front of cars standing nearby, in order to save the time that would be required to go to the closet; and it was further shown that it was usual and customary for the men to do this, and that this custom and usage was known not only by the foremen of section crews, but by all the men operating and controlling the movement of cars in the yards.

It further appears from this evidence that when the men left the car to go to work, Johnson and the foreman walked together from the door of the car out of which they had come in a northerly direction between tracks number eight and nine until they reached the north end of the car, when Johnson left the foreman and went to the north end of this car with his face toward the car and his back toward the north, for the purpose of urinating, the foreman continuing in a northerly direction between the two tracks, and that at this time there were no cars on track number eight north of the car in front of which Johnson was standing. That when Johnson had been standing in this way for a few moments a coal car that had been disconnected from the engine some distance from where Johnson was, by the method known as a "running switch," came down on track number eight from the north and collided with the car at the end of which Johnson was standing. That he was caught in this collision and killed almost instantly. That there was no person on this coal car to give warning of its approach or presence or to control its movements, and that it was running at a speed of about 20 miles an hour when it struck the car in front of which Johnson was standing.

These witnesses further said that when the rapidly moving coal car struck the standing car it made a great noise and the force was such as to lift the end of the standing car from the track and drive it forward some distance. It was further shown by plaintiff's evidence that it was usual and customary in moving cars as this coal car was moved to have some person on the front end of the car for the purpose of giving warning of its approach and to control, if necessary, its movements, and the rules of the company so provided; and, further, the custom of the foreman of the gang of men to keep a look-out for moving cars like this and warn the men of their approach, and that the foreman who was walking with Johnson when Johnson left him to go in front of the car, continued walking north between tracks eight and nine and was passed by this coal car when it was about thirty yards from where Johnson was standing, but that he did not give Johnson any warning of its approach.

The evidence in behalf of the railroad company tended to show that a urinal or closet had been provided for the use of the section men and other employes, and that it was not usual or customary for the section-men to go between or in front or behind standing cars for the purpose of urinating, nor were they requested or directed so to do by the foreman. That there was standing on track number eight, when the men came out of the car into which they had gone to get out of the rain, several box cars, some of them coupled together and others standing several feet apart, and that Johnson, for the purpose of urinating, went between these box cars, and his view of the north end of track number eight was obstructed by the box car standing between him and the north end of this track, and likewise this box car hid Johnson from the view of any person on the north end of this track. That, while he was thus standing between these box cars, a cut of cars was shunted in on track number eight from the track with which it connected, by the method known as a "running switch," and that these cars so shunted in, after they were cut loose from the engine, moved south on track number eight toward the cars between which Johnson was standing, at a speed of from four to six miles an hour. That there was on the front car of this cut of cars a brakeman stationed at the brake for the purpose of warning persons of the approach of the cut of cars, and to control

their movements, which he could have done by the application of the brake had it become necessary. That when this cut of cars struck the box car it pushed the box cars a short distance, and Johnson was killed by being crushed by the two box cars between which he was standing. That the brakeman on the cut of cars did not know that Johnson was standing between the cars, nor did the section foreman know that he was there.

It will thus be seen that, according to the evidence for the railroad company, it was not guilty of any act of negligence that caused or contributed to the death of Johnson, as, under its evidence, the cut of cars that came in on track number eight was under control, running at a slow rate of speed, and in charge of a brakeman in a position to give warning of its approach, while Johnson was between standing cars where he could not be seen by the brakeman.

On the other hand, the evidence for the plaintiff made out a case of negligence entitling the jury to determine the issue and award damages.

With the evidence in the condition stated, the court gave to the jury seven instructions. Instruction number one reads: "If you believe from the evidence in this case that the defendant caused, suffered or permitted a cut of cars to run over the defendant's track, at the time and place mentioned in the evidence, without any person or persons in a position on said cut of cars to maintain a lookout and give warning of their approach, and to control their movements, and that said cars ran over and against the deceased, Johnson, and killed him, by reason of said failure to have a person or persons in a position on said cars to give warning of the approach, and control their movements, and but for such failure the accident would not have occurred, then this is negligence, and you should find for the plaintiff."

In instruction number two the jury were told, in substance, that if they believed from the evidence that Johnson stepped behind a box car to urinate in the presence of the foreman, and that it was the custom of the section-men so to do, or that in so doing he was acting under the orders of the foreman, and that, while in the act of urinating, a cut of cars ran upon him, inflicting injuries from which he died, and the foreman negligently failed to ascertain the approach of the cars or to give notice to Johnson of their approach, if it was rea-

sonably within his power to do so without endangering his own life, they should find for the plaintiff.

They were further told that unless they believed that the death of Johnson was brought about by the state of facts set out in instructions one and two, they should find for the defendant.

Instruction number four submitted the measure of damages allowable under the Federal Employers' Liability Act.

Instruction number five was on the subject of the contributory negligence of Johnson, and in instruction number six the jury were told that, "if you believe from the evidence that decedent, when he received his injuries, and was killed, was between two box cars, then you will find for the defendant."

In the other instructions negligence and ordinary care were defined and directions given as to the verdict if it was for the plaintiff.

It will be observed that under instruction number one the jury was directed to find for the plaintiff if they believed his death was brought about by the act of the company in permitting a cut of cars to run without any person in a position on the cars to maintain a lookout and give warning of their approach. In giving this instruction the court evidently had in mind the evidence of the plaintiff to the effect that Johnson was standing at the north end of the car on track number eight in a position where he could be seen and warned by a person on the front end of the cut of cars shunted in on this track. In instruction number six the court submitted the company's theory of the case, that Johnson was standing between two box cars hidden from view, and, consequently, there should be a verdict for the defendant.

In yards like the one here in question, occupied by a large number of employes moving about in the performance of their various labors, we think it was the duty of the railroad company when it shunted the cut of cars or a single car in on track number eight, to have a person on the forward end of the front car for the purpose of giving warning of its approach and to control its movement, and that it should have been run at such a rate of speed as to enable the person in charge to give effective notice of its presence to any person on the track.

Therefore, in place of instruction number one, the jury should have been instructed, in substance, that if they believed from the evidence that the tracks and yards were used by so large a number of employes as that the railroad company, in the exercise of ordinary care in the movements of its cars and engines, should have anticipated the presence of employes on the tracks in the discharge of their duties or standing or moving about in the yards, or going to and from their work, it was the duty of the company, in the movement of. the cut of cars mentioned in the evidence, to run them at a reasonable speed, have them under control, and have some person in a suitable position to warn employes of their approach, and, if they believed from the evidence that the company failed to perform these duties, or any of them, and further believed from the evidence that Johnson was in a position where he could have been seen by a brakeman, if there had been one on the front end of the cut of cars, in time to have averted, by the exercise of ordinary care, the injury to him, they should find for the plaintiff.

This view of the duty of a railroad company in the movement of its cars and engines in yards occupied by such a number of employes as to put upon the company, in the movement of its cars and engines, the duty of anticipating their presence upon the track, and of exercising ordinary care to prevent injury to them, is, we think, well supported by the opinions of this court in cases arising under states of fact such as were shown to exist by the evidence in this case.

Thus, in L. & N. R. R. Co. v. Lowe, 118 Ky., 260, it appears from the opinion that Lowe was an assistant inspector of trains in the yards of the railroad company at Lebanon Junction, and that, while in the discharge of his duties as such inspector, he was struck by a backing engine, the tender of which had been piled so high with coal as to obstruct the engineer's view of the track in front of the moving engine; and that no warning was given of its approach by ringing the bell or sounding the whistle. Under this evidence it was insisted on behalf of the company that it did not owe Lowe the duty of keeping a lookout or giving him warning of the approach of the engine, but the court rejected this view, and in the course of the opinion, after quoting with approval a number of cases pointing out the measure of care railroad companies are required to exercise in the

movement of cars and engines at places where the presence of persons on the track must be anticipated, said:

"In towns and cities where the presence of persons on the track of the railroad may be rightfully anticipated, a due regard for human life requires that a lookout should be maintained in the operation of engines and trains. This has been often declared. The place where the injury sued for occurred was in a town, and at a place which was used, not only by the numerous employes of appellant, but by other persons, in passing from the station to the coalyards, and from one portion of the town to another. The presence of persons on or about the track at the point where the injury occurred should reasonably have been anticipated, and it was incumbent on those operating the engine in question to keep a lookout."

In Shelby's Admr. v. Cincinnati R. R., 85 Ky., 224; Conley's Admr. v. Cincinnati R. R., 89 Ky., 402; L. & N. R. R. v. Potts, 92 Ky., 30; Barber v. Cincinnati R. R., 14 Ky. L. R., 869; Cason's Admr. v. Covington R. R. Co., 29 Ky. L. R., 352; L. & N. R. R. v. Bays' Admr., 142 Ky., 400; C. N. O. & T. P. Ry. Co v Mullane's Admr, 151 Ky., 499; C. N. O. & T. P. Ry. Co. v. Ackerman, 148 Ky., 435, and in many other cases, the rule has been distinctly announced and uniformly adhered to by this court that, in places where the presence of persons on railroad tracks must, in the exercise of ordinary care, be anticipated, it is the duty of the railroad company, in the movement of its cars and engines, to keep a lookout, observe a reasonable rate of speed, and have some person in a position where he can control the movement of the cars or engines.

The argument, however, is made that in this line of cases, and others presenting like states of fact, the rule of care stated was laid down as to persons not employes who were injured at highway crossings, or in cities or towns or populous communities, or as to employes who were engaged in work requiring their attention and presence on or about the track occupied by the moving car or engine that caused the injury complained of, and so is not applicable to the facts of this case.

Generally speaking, this is true of this line of cases, but we are unable to perceive any good reason why this humane and wholesome rule, established for the protection of life and limb, should not be extended to embrace employes in yards where such a number of employes are

engaged as to put upon the company the duty of anticipating their presence upon the tracks. There is no reason why the same degree of care should not be exercised in the movement of cars and engines in such yards as is required in their movement in populous communities or in towns and cities, except, of course, that employes who are themselves charged with the duty of looking out for the movement of engines and cars are not entitled to this protection. C. N. O. & T. P. R. R. Co. v. Swann, 160 Ky., 458. But in all yards like the one where Johnson was killed there are numbers of employes who are not specially charged with the duty of keeping an eye on the movements of cars and engines for the protection of other persons or property, and as to this class of employes the railroad company is under a duty to exercise the care indicated to protect them from injury; and this is so whether the injured employe belonging to this class is directly engaged at his work or is standing or moving about in the yards on some matter not immediately connected with his work, because all of the employes in the yards, with the exception of those noted, have the right to depend upon the company exercising the measure of care we have laid down and to govern themselves accordingly.

It is said, however, that this is a departure from the rule announced by this court in L. & N. R. R. v. Hocker, 111 Ky., 707. In that case Hocker, a telegraph operator, located in a yard of the company at Latonia, was injured when a cut of cars ran against two coupled cars between which he was standing urinating. In holding that the company was not liable, this court put its decision upon the ground that Hocker went between these cars for his own convenience, and not in the discharge of any duty that he owed to the company, and really occupied the attitude of a trespasser, saying:

"The law is well settled, both in this State and elsewhere, that a railroad company is not under obligation, in moving its engines and cars in its own switch yard, to take special precautions or give special warnings to avoid injuring any unauthorized person who may, for his own convenience, go therein, until the presence of such person in a situation of danger has been discovered."

In that case, it does not appear that there was any evidence of the number of employes who used the yard, nor did the court undertake to lay down any general rule

to be observed by the company, in the movement of its cars and engines, for the protection of employes. The law was announced with reference to the particular facts of that case, and, as the record we have develops a very different state of facts from those appearing in the Hocker case, we do not regard it as controlling our decision in this case.

The cases of Age's Admr. v. L. & N. R. R., 148 Ky., 219; L. & N. R. R. v. Hunt's Admr., 142 Ky., 778; Blankenship's Admr. v. N. & W. R. Co., 147 Ky., 260; C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky., 445, are also relied on by counsel for the railroad company, but the case we have is, on the facts, readily distinguishable from this line of cases, and we think the instruction we have indicated should, on another trial, be given in lieu of instruction number one.

In lieu of instruction number two, the jury should have been told, in substance, that if they believe from the evidence that the section crew with which Johnson was working had been directed or requested by the foreman to go behind or in front of or between cars for the purpose of urinating, or that it was usual and customary for section-men to do this, and this usage or custom was known to the foreman of Johnson's crew, and the foreman of this crew knew that Johnson had gone in front of or between cars for the purpose of urinating, and he saw, or, in the exercise of oridnary care, could have seen the approaching car, or cut of cars, in time to have given warning, it was his duty to exercise ordinary care to warn Johnson of the danger he was in, and, if he failed to give such warning, the jury should find for the plaintiff.

The court should also give for the defendant the converse of instructions number one and two.

On the measure of damages, in lieu of instructions number four and five, the court should give the approved instruction in cases arising under the Federal Employers' Liability Act; C. & O. Ry. Co. v. Dwyer, 157 Ky., 590; Michigan C. R. Co. v. Vreeland, 227 U. S., 59, 57 L. Ed., 417; American R. Co. v. Didrickson, 227 U. S., 145, 57 L. Ed., 456.

If the plaintiff's theory of the case, as supported by the evidence, is correct, the negligence of the railroad company was the sole cause of Johnson's death, and, if the company's theory, supported by its evidence, is correct, the act of Johnson in going between the cars was

the proximate cause of his injury and death, and this view is fully presented in instruction six directed to be given. If, however, the company asks an instruction in the ordinary form on the subject of contributory negligence, it may be given.

Under the railroad company's theory of the case, Johnson was standing between two box cars, where he could not be seen by the brakeman who its evidence showed was on the cut of cars, and, if this was true, of course, the brakeman, if one was there, could not have given Johnson warning to get out of the way or have averted the injury. The company had the right to put cars in on this track and to push them against other cars standing on the track, and so an employe situated as the company says Johnson was, assumed the risk of being injured by the movement of other cars.

The case of C. N. O. & T. P. R. Co. v. Helm, 149 Ky., 340, presented such a state of facts. Helm when injured was between cars and could not be seen, and, in holding that there could be no recovery, we said: "We have held in a number of cases that cars should not be turned loose with no one upon them to keep a lookout or to control their movement, in yards where the presence of persons on the track may be anticipated. But, in this case, if a person had been on the car keeping a lookout he would not have been able to see Helm, who was between the second and third car, standing on the house track, for he was completely shut out from all view by the cars between which he was standing. A lookout would have been wholly unavailing as to him, and he, therefore, cannot complain that a lookout was not maintained. The switching crew were using the house track and had a right to use it. They had a right to run the car they returned to that track against the cars standing on the track, as they had no reason to anticipate that any one would be on the cars. Helm had concealed himself between the cars and intentionally kept the persons in charge of the yards in ignorance of his whereabouts and of what he was doing. There cannot, therefore, be any recovery against the company on the ground that the car was run against the other car."

If, however, the foreman knew Johnson was between these cars and knew, or, in the exercise of ordinary care, could have known, of the approach of the moving cut of cars in time to have warned Johnson of the danger, there should be a verdict for the plaintiff, because, un-

der the evidence for the plaintifi, it was not only usual and customary for employes to go between cars as Johnson did, as the foreman well knew, but they were directed and requested so to do by the foreman.

So that, in lieu of instruction number six, the jury should be told, in substance, that if they believe from the evidence that when Johnson was killed he was standing between two box cars where he would be concealed from the view of a brakeman in charge of the cut of cars, they should find for the defendant, unless they believed that it was usual and customary, and so known to be by the foreman of Johnson, for employes to go between cars for the purpose of urinating, or that they were directed or requested so to do by the foreman, and the foreman knew where Johnson was and knew, or, in the exercise of ordinary care, could have known, of the approach of the cut of cars in time to have warned Johnson of the danger, and, if they so believed, they should find for the plaintiff.

It is further contended by counsel for the company that in cases arising under the Federal Employers' Liability Act, the jury should be instructed that they can not find for the plaintiff unless they believe, from a preponderance of the evidence, that his theory of the case as averred in the petition is true. In other words, it is said that, although the jury may believe from the evidence that the facts upon which the plaintiff relies to recover are true, they cannot yet find for him unless they believe that these facts have been proved by a propondderance of the evidence.

In administering the Federal Employers' Liability Act in our courts we think the practice and procedure followed in the trial of common law actions generally should be observed in the trial of cases arising under this act. C. & O. R. Co. v. Kelly's Admx., 161 Ky., 655. In other words, except in so far as the act itself modifies or changes rules of practice and procedure or substantive law, cases arising under the act should be heard and determined in the State courts in the same manner as would like cases arising under the law prevailing in this State. If the evidence in a case heard and determined under this act would be sufficient to take the case to the jury and support the verdict if the suit had been brought under the State law, it would be sufficient to take the case to the jury and support the verdict if it was brought under the Federal act. And it is the well-settled practice

in common law actions in this State, that the case should go to the jury if there is evidence conducing to support the averments of the petition constituting the grounds of action relied on for recovery, although the weight of the evidence, both numerically and in probative value, may be with the defendant.

This rule of evidence is sometimes called the "scintilla rule," and, being called the "scintilla rule," is frequently the subject of much criticism as well as censure from those members of the profession who are not favorably disposed towards our practice in this respect. The word "scintilla," however, as applied in our practice, does not mean that the case should be submitted to the jury when there is merely a "spark" or a "glimmer" of evidence, but means that, when there is some evidence to support the plaintiff's case, the court will not undertake to determine either its weight or sufficiency by taking the case from the jury, nor will the court, upon all the evidence, take the case from the jury merely because the evidence on one side may be stronger, both numerically and in probative value, than the evidence on the other side, but will, when there is conflict in the evidence, leave the disputed question of fact to the jury.

If, however, it should appear that, admitting the plaintiff's testimony and every fair inference that is reasonably deducible from it to be true, he has still failed to make out his case, then there could be no conflict in the evidence and the court should take the case from the jury. Shay v. R. L. & T. P. Co., 1 Bush, 108; United Shakers v. Underwood, 11 Bush, 265; L. & N. R. R. v. Howard, 82 Ky., 212; Baumeister v. Markham, 101 Ky., 122; Thompson v. Thompson, 17 B. Mon., 23; Dallam v. Handley, 2 A. K. Mar., 418.

It is further urged that it was not competent to permit witnesses to testify that the coal car was running at an unusual or high rate of speed or to describe the slippery condition of the rails on account of the rain; but we think this evidence, if proffered by persons who from experience or observation were qualified to describe unusual speed or the condition of rails, was admissible.

It is also argued that it was error to permit witnesses for the plaintiff to give evidence as to written rules that had been promulgated by the company regulating the movement of cars in yards, and this upon the ground that the written rules themselves were the best evidence of their contents. Undoubtedly the written rules

were the best evidence, if there were in fact written rules, regulating the movement of cars in yards, established and published by the company.

The correct practice is that when a party to a suit desires to introduce as evidence relevant rules that have been published and promulgated by the adverse party, or to prove their contents, the party who desires to do so should give notice to the adverse party that he wishes a copy of the rules to use on the trial, and, if the party requested fails to produce the rules, then their competent contents may be shown by qualified persons. For example, in this case the rules desired by the plaintiff were in the possession of the railroad company, and, if the plaintiff desired to introduce these rules as evidence, notice should have been given to the company or its attorney to produce them for such use, and, if the rules were not produced in response to the notice, then witnesses who had knowledge of the rules could testify concerning them.

For errors in instructions, as well as for some other errors that we have not noticed because there is no reason why they should appear on a re-trial, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.