## Hines, Director General v. Kesheimer's Admrx.

### (Decided March 2, 1923.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Second Division).

1.  Master and Servant—Failure to Post Man on Moving Cars not Negligence Towards Switchman Knowing Movement.—Though a railroad company is negligent, if it moves cars along its track at night without a light or employe on the cars to warn members of the public and other employes engaged where their presence ought to have been anticipated, the failure to have a man or a light on cars moved in a switching operation was not negligence towards a member of the switching crew who had been directed to turn the switches for the movement of those cars so that he had warning that they were coming.

2.  Master and Servant—Evidence Held not to Warrant Submission of Negligence in Failing to Wait for Signal from a Switchman.—In an action for the death of a switchman run over by cars kicked towards a track for which he had turned the switch, the evidence did not warrant submitting to the jury the issue of the negligence of the foreman in failing to wait until he received a signal from the switchman before signaling to the engineer to start, where it was uncontradicted that it was not the custom to wait for such signal

if the foreman could see the lights of the switch targets, as he did in the particular case, and the only evidence tending to show the foreman did not wait for the signal was his own testimony that he did not remember whether the signal had been given or not.

B. D. WARFIELD and MOORMAN & WOODWARD for appellant.

BECKHAM OVERSTREET and EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellee, as administratrix of her deceased husband, recovered a judgment for $10,000.00 for his death, alleged to have been caused by appellant's negligence.

For reversal of the judgment, appellant insists the court erred in refusing to direct a verdict for him, and if mistaken in this, the court erred in instructions given.

In support of the motion for a directed verdict, it is urged (1) that no negligence was proven, (2) that the death was not shown to have been the proximate result of the alleged negligence, (3) that decedent assumed the risk, and (4) was guilty of contributory neglect as matter of law.

Decedent, at the time of his death, was 52 years of age, and had been employed as a switchman in the L. & N. yards in Louisville, where his death occurred, for about ten years, and previous to such employment had been first a railroad brakeman and then a conductor. His death occurred at about 7:15 on the evening of December 6, 1918. At the time he was a member of a switching crew engaged in sorting cars according to their destination, in a portion of the yards constructed for and devoted to that purpose. This portion of the yards consists of a straight track called the "drill" track, from which twelve "ladder" tracks, number 1 to 12, lead off obliquely nearly due north and parallel to each other, and all of these tracks are slightly down grade toward the north. A cut of cars is brought on to one of these ladder tracks from elsewhere in the yards, and the switching crew take the cars out on the drill track and "kick" them into the different ladder tracks so as to assemble on the same track all cars having a common destination or route out of Louisville. This crew consists of five men—a foreman, engineer, fireman, front and rear switchmen. Decedent was the rear switchman, and it was his duty, under the direction of the foreman, to "line the track" so as to

allow the cars to go into the desired ladder track as they were "kicked" down the drill track.

The switch-heads, by which deceased "lined" the track as directed by the foreman, are located in a row in a space east of the drill track, and on the opposite side thereof from the ladder tracks. There is a switch-head opposite the point where each ladder track diverges from the drill track, which shows a yellow light when the switch is set to allow cars to go into that "ladder" track, and a green light when the switch is set so as to close that track.

A few minutes before the accident, a Big Four engine came into the yards on track ten, which it was desired to take back out on track eight. Some cars were standing on the drill track between tracks eight and ten, and to remove these cars out of the way of the Big Four engine, the cut of cars attached to the switch engine which was headed south, were backed down the drill and these loose cars pushed into track twelve. As the engine and cut of cars attached to it started back up the drill track, the foreman told decedent to "line up" switches 10 and 8 after the Big Four engine passed into track 8, so that four cars could be kicked down the drill into track 12, and then to come over to track 3 to set the brakes on some cars he was going to kick into that track.

The foreman rode the cut of cars back to the head of the drill track and stationed himself on the side of the track where he could see the switches at tracks 10 and 8, and where he could be seen by the engineer. After the switches at 10 and 8 showed green lights, he signalled the engineer to kick the four cars down the drill which he desired to place in track 12, and which he, or the head brakeman, had uncoupled from the other cars attached to the engine. In the meantime, the cars for track 3 had been kicked into that track.

Decedent was missed four or five minutes later, and upon search was found dead nearly opposite switch-head 6, and according to two witnesses, lying outside the rails of the drill track on the ladder track side, but according to another witness, he was lying between the rails of the drill track near the west rail.

The foreman was the last of the switching crew to see him alive, and he saw his lantern as he lined the track at switches 10 and 8, but did not see him thereafter. The yardmaster, however, saw him at switch 6, and as he thought, setting that switch, but he did not see him leave

the switch-head, as he was called into a small office near-by to answer the telephone.

No one saw the accident or knows just how decedent met his death, but directly thereafter, the wheels of the four cars that were kicked down the drill track and into track 12 were examined, and blood was discovered on the wheels on the ladder track side of the second of those cars, and, according to one of these two witnesses, there was no blood on the wheels of the first car, while the other states he thought he saw a little blood on one of the wheels of that car, but he does not say whether it was the front or rear wheel.

It is insisted for appellee that this evidence proves that deceased was killed by this cut of cars striking him unawares as he crossed the drill track from switch 6 to go to track 3 to catch the cars kicked into that track, and as he had been ordered to do by the foreman.

By appellants it is contended that the manner and cause of decedent's death is a question of speculation merely, and that it is as reasonable to infer from the evidence that he accidentally fell under the first or second car from the ladder track side, after he had crossed the drill track, or was killed by these cars in some other way, as that he was struck by the first car as he was crossing the drill track; and, that even if it is to be assumed that it occurred in the latter way, he was guilty of contributory neglect in not keeping out of the way of the cars for which he had just set the track and that he knew were coming on that track.

But passing these questions of the proximate cause and contributory negligence, it is insisted for appellee that defendant was negligent (1) in that the cars were kicked down the drill for track 12 without signal from him so to do, (2) in that there was no light on the end of the four cars, and (3) because there was no person on the end of these cars to warn deceased of their approach.

The defendant introduced no evidence on the trial, for the reason that plaintiff introduced all of its employes who knew anything about the accident. Plaintiff also introduced two employes of defendant who knew nothing about the accident, but who testified as to the custom in the yards of signals by the rear switchman to inform the rest of the crew that he had set the switches as directed. But every one of these witnesses testified that in such operations sometimes the rear switchman would give a signal that the switches were set, and sometimes he

would not, and that it was not customary for the foreman of the crew to wait for such signals when he could see the switches were set by the lights on the switch-heads, as unquestionably was the case here.

Not only so, but every one of these witnesses, when asked about the matter, testified that neither a light nor a man is ever placed on the end of these cars, and that it would be impracticable to do so. Besides, it patently was unnecessary so far as the members of the crew were concerned, since to do so could serve only the rear switch-man, who had been informed of the proposed movement of the cars and had set the switches for that very purpose.

We have frequently held that, as to members of the public and employes otherwise engaged where their presence ought to have been anticipated, it is negligence to turn loose even in the company's yards a cut of cars without light or employe to warn such persons of the approach of the cars, and it is upon these cases that appellee relies. I. C. R. R. Co. v. Stewart, 23 Ky. L. R. 637; I. C. R. R. Co. v. Jones' Admr., 118 Ky. 166, 80 S. W. 484; L. & N. R. R. Co. v. Adams' Admr., 106 Ky. 863, 51 S. W. 577; Conley's Admr. v. C. N. O. & T. P. Ry. Co., 89 Ky. 403, 12 S. W. 764; L. & N. R. R. Co. v. Johnson's Admr., 161 Ky. 826, 171 S. W. 847.

But a very different question is presented here, and we have never held that the company owes to those engaged in the switching operation the duty of displaying a light or placing another person on the cars to warn them of the approach of the cars they are engaged in moving, and we have not been referred to a case from any court so holding.

Decedent was well aware that no lights or man were ever placed upon such cars for his protection. Besides it is apparent that to do so in every switching operation in which he was engaged was alike impracticable and unnecessary, since neither a light nor a man on such cars could have given him any information he did not possess. He was sent to set the switches in order to let these cars go on a certain track; he set the switches, with the knowledge that the cars were coming, and it was certainly his duty, without further warning, to keep out of their way.

We are therefore confident there was no negligence toward deceased, in failing to have lights or a man on the end of these cars, although this would have been negligence to persons otherwise engaged and not thus in-

formed, and whose presence ought to have been anticipated.

Hence the court erred in submitting the case to the jury upon the assumption that such failure was negligence toward decedent.

Neither do we think it was negligence upon the part of the foreman to signal the engineer to start the cars down the drill track for track 12, when he saw from the switch-lights that they had been set as he had directed for the purpose, and without waiting for a signal so to do from deceased, since we think the proof shows conclusively and without contradiction that such was the custom in such operations in these yards where deceased had been employed for ten years.

But if it might be conceded the evidence of the two witnesses for plaintiff, to the effect that sometimes the rear switchman gave such signals, was sufficient to make it a question for the jury as to the custom in this respect, which we do not think is true, there was yet no negligence shown since no one testified that deceased did not, on this occasion, give such a signal after he set the switches at 10 and 8. The only witness who testified on this question was the foreman, who, testifying for plaintiff, said he did not remember whether he received a signal from deceased or not.

It results therefore there was no proof of negligence upon the part of defendant, and for this reason alone the court erred in overruling defendant's motion for a peremptory, and we need not pass upon any of the other questions raised, which are left open.

Wherefore the judgment is reversed, and the cause remanded for another trial consistent herewith.

Judge Moorman not sitting.