CASE 3—ACTION BY F. S. BURK AGAINST J. C. B. FOSTER FOR DAMAGES
FOR UNSKILLFUL SURGICAL TREATMENT.—OCT. 21..

# Burk v. Foster.

APPEAL FROM OWEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

PHYSICIANS—SKILL REQUIRED—LIABILITY FOR LACK OF SKILL.

1. The care and skill required of a physician in treating a
patient is not to be measured by that exercised by "ordin-
arily skillful and prudent physicians in that (particular) vicinity
in treating a like injury," but by such as is exercised generally
by physicians of ordinary care and skill in similar communities.

2. The mere fact that the result of a patient's treatment "is
as good as is usually obtained in like cases similarly situated"
will not preclude a recovery by the patient against the physician
for negligence and lack of skill, the patient being entitled to
the chance for the better results which might come from proper
treatment.

W. W. DICKERSON AND J. W. CAMMACK FOR APPELLANT.

On January 31, 1900, appellant, while driving a team hitched
to a farm wagon, was thrown therefrom with great force, fall-
ing on his arm and shoulder, and was dragged some distance
by reason of the lines being entangled around his leg.  He
was assisted to the house of Mrs. Williams and sent for appellee,
who is a physician and surgeon, to treat his injuries, and who
came within an hour after the injuries were received.  The ex-
amination by appellee was made in the presence of Mrs.
Williams and her two sons, no other persons being present.  Ap-
pellee says he found the humerus broken in two places and an
oblique break between, making three fractures of the bone;
one at the surgical neck, and one at the insertion of the deltoid
muscle, and one between the two.  He denies that it was a
simple fracture.  He admits that he did not then discover that
the shoulder joint was dislocated, and says it was not then dis-
located, but admits he found it dislocated on an examination
made after the patient had ceased to take treatment.

Appellant says that the doctor did not uncover or examine the
shoulder joint at all; did not remove the shirt therefrom, and

Burk v. Foster.

did not in fact see the shoulder, and stated to him that it was a "simple lap break," and in this statement appellant is corroborated by Mrs. Williams and her two sons.

Appellant did not know his shoulder was dislocated until after the doctor had discharged him in April, more than two months after he was injured, when Dr. Stamper casually examined him one day in a store and told him, and he then reported the fact to appellee, who then examined him and told him it was not dislocated, but was only sore and would slowly get well.

This suit was brought on August 14, 1900, in which appellant seeks to recover damages for the neglect of the appellee in failing to discover and correct the dislocated shoulder whereby appellant has become permanently crippled.

Our contention is that instruction No. 3, given by the lower court, is unauthorized in any view of the case, and that there is no allegation in the pleadings upon which to predicate it. Said instruction is as follows:

"The court instructs the jury that, although they may believe from all the evidence in this case that the defendant failed to exercise that degree of skill care and attention in setting, dressing and treating plaintiff's arm, which an ordinarily prudent and skillful physician and surgeon in that vicinity would have exercised in treating a like injury, yet if the jury further believe from the evidence that the result is as good as is usually obtained in like cases similarly situated, then the jury can not find for the plaintiff any sum whatever on account of his permanent injury, if there is any." This instruction does not distinguish the dislocation from the fractures, is confusing and misleading and does not clearly and fully state the law of the case.

We submit that the verdict is palpably against the evidence and is contrary to law, that all the instructions are erroneous, and the third so flagrantly wrong as to render a recovery impossible. Lewis v. Dwinnell, 84 Me., 497, and cases cited.

LINDSEY & BOTTS FOR APPELLEE.

MOODY & BOURNE OF COUNSEL.

Our contention is that the instructions were proper, and that the verdict and judgment thereunder are not contrary to law or to the evidence. Alexander v. Menifee, 23 Ky. Law Reporter, 1151.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant brought this suit against appellee,, a physi-

cian and surgeon, to recover damages for the alleged care-
less and negligent treatment of appellant's broken and
dislocated arm. The original injury was caused by the
overturning of appellant's wagon, the team becoming
frightened, running away with the wagon, and dragging
appellant over frozen and rough ground for quite a dis-
tance, fracturing his arm in one or more places between
the elbow and shoulder, and dislocating the arm at the
shoulder joint. The bone broken was the humerus. The
dislocation was the slipping, pushing, or wrenching the
head of the humerus from the glenoid cavity. Within an
hour after the accident appellee was called in to attend
the injuries. It is charged that he failed to discover the
dislocation, and therefore failed to treat it. The conse-
quence was, as alleged, that the muscles of this arm have
atrophied, the shoulder joint is stiffened, and this arm is
now practically useless. All agree that, when discovered,
some months later, it was too late to remedy the matter.
It is charged that appellee's failure to discover and treat
the dislocation was because of his negligence and lack of
proper care and diligence. Appellant and appellee each
lived in the vicinity of Monterey, in Owen county. Mon-
terey is a village on the Kentucky river, but not on any
railroad line. It is not claimed that the fractures were
not properly treated. They have healed, and apparently
in good condition. The whole case turns upon the nature
of the examination given appellant by appellee, and appel-
lant's duties in that respect. That appellee did not dis-
cover the dislocation is admitted, as it is, of course, that
he did not treat it. That it could have been discovered
by an ordinary examination does not seem to admit of
doubt. As to the manner of treatment that should have
been given to it, there is some conflict in the evidence.

Burk v. Foster.

The circuit court gave the jury the following instructions as embracing the law of this case: "(1) The court instructs the jury that if they believe from all the evidence in this case that the defendant, in setting, dressing and treating the plaintiff's arm, did not exercise that degree of skill, care and attention which ordinarily skillful and prudent physicians and surgeons in the vicinity would have used in a like injury, then the jury should find for the plaintiff such damages as they believe from the evidence he has sustained, if any, not to exceed $10,000, the amount claimed in the petition, and in estimating the damage the jury should consider the physical pain suffered by the plaintiff on account of such unskillful and careless services, and the impairment of his ability to earn money on account thereof. (2) The court instructs the jury that if they believe from all the evidence in this case that the defendant, in setting, dressing plaintiff's arm, used and exercised the degree of skill, care and attention that ordinarily skillful and prudent physicians and surgeons in the vicinity would use in setting, dressing and treating a like injury, then the jury should find for the defendant. (3) The court instructs the jury that, although they may believe from all the evidence in this case that the defendant failed to exercise that degree of skill, care and attention in setting, dressing and treating plaintiff's arm which an ordinarily prudent and skillful physician and surgeon in that vicinity would have exercised in treating a like injury, yet if the jury further believes from the evidence that the result is as good as is usually obtained in like cases similarly situated, then the jury can not find for the plaintiff any sum whatever on account of his permanent injury, if there is any." Under these instructions the jury found for the defendant.

Burk v. Foster.

For appellee it is claimed that this court approved this set of instructions (though this fact is not to be gathered from the opinion) in Alexander v. Menefee, 23 R., 1151, 64 S. W., 855. In that action the patient had recovered a judgment against the physician under the instructions referred to, and the latter had appealed, claiming that these instructions were prejudicial to him, in not being sufficiently liberal. The case was affirmed, this court holding that the instructions were as favorable to the defendant as he was entitled to. This is by no means an approval of the instructions. It leaves the question open so far as they affect the rights of the other party. In Hickerson v. Neely (21 R. 1257) 54 S. W., 842, this question was not involved in the decision. As has been stated, Monterey is a village, somewhat isolated, and is a rural community. The number of physicians residing and practicing in that "vicinity" is not shown, but presumably they are not numerous. It will be observed that the court, by the instructions given the jury, restricted the skill, attention and prudence required of the physician in this case to such as was exercised by "ordinarily skillful and prudent physicians and surgeons in that vicinity in treating a like injury." There are some cases which limited the physician's liabilities by this standard. So far as this State is concerned, we are not aware of any reported case where we have approved of this doctrine. It may be that in any given community—a rural one, sparsely inhabited—there may be only one or two physicians, and they may each be utterly incompetent, and be what is popularly termed a "quack." Should the law permit such a one to hold himself out as a member of this learned profession, and invite the confidence and reliance of those suffering from serious injuries and ailments, so as to engage his

services, and then, though he is a mere bungler and an ignoramus, an empiric of the lowest degree, allow him to escape liability for his negligence and lack of skill upon the plea that he and his associates in the profession in that community are all of a kind, and none of them have either sense, care, or capacity? The mere statement of the proposition would seem to carry with it its answer. In Gramm v. Boener, 56 Ind., 497, it was said: "It will not do, as we think, to say that, if a physician or surgeon has exercised such a degree of skill as is ordinarily exercised in the particular locality in which he practices, it will be sufficient. There might be but few practicing in the given locality, all of whom might be quacks, ignorant pretenders to knowledge not possessed by them; and it would not do to say that, because one possessed and exercised as much skill as the other, he would not be chargeable with the want of reasonable skill." See, too, Kelsey v. Hay, 84 Ind., 189, and Smothers v. Hanks, 34 Iowa, 286, 11 Am. Rep., 141. On the other hand, it must be recognized that the most efficient and talented in the profession generally, and very naturally, seek better and more lucrative fields for employment; that those living in a sparsely settled neighborhood will not have, in any probability, the experience, the opportunity for acquiring skill by practice in such cases, that comes to the practitioner of medicine and surgery in the city. It generally follows, then, that the practitioners in rural localities have not the same high degree of skill, or knowledge, or education that may be found in large cities and populous communities. As the physician engages to bring to bear upon the case only such skill and care as is ordinarily practiced by others of the same profession in like situation, his liability should be measured by that standard. We think the

sounder rule is, not that the physician's skill and degree
of attention should be measured by those of his communi-
ty, but by such as is exercised generally by physicians of
ordinary care and skill in similar communities. As said
in Small v. Howard, 128 Mass., 131, 35 Am. Rep., 363:
"He was bound to possess that skill only which physicians
and surgeons of ordinary ability and skill, practicing in
similar localities, with opportunities for no larger ex-
perience, ordinarily possess."

The third instruction given is also erroneous. In addi-
tion to the criticism already discussed, to which it, too,
is subject, it precludes a recovery, whatever the defend-
ant's negligence or lack of skill, "if the result is as good
as is usually obtained in like cases similarly situated."
It is known of all men that many cases of injury or ill-
ness are recovered from without any medcal attention,
while many others of the same kind do not recover, although
apparently the best medical attention is given. What the
proportions are might be impossible to determine. It is
equally well known that two or more cases of apparent
similarity, treated by the same treatment, and, indeed, by
the same physician, may, and often do, have directly op-
posite results as to recovery. We think, when a physi-
cian undertakes to give his attention, care and skill to a
given case of injury or disease, the patient is entitled to
the chance for the better results that are supposed to
come from such treatment, and as are recorded by the
science of his profession to a proper treatment. That the
patient might have died in spite of the treatment, or that
"ordinarily" they did die in such cases (as fomerly in cases
of cholera, smallpox, etc.), is no excuse to the physician
who neglects to give his patient the benefit of the chance
involved in a proper treatment of his case. That no treat-

ment would avail. or that ordinarily careful treatment would not, might be shown, if the case so warranted. In this case the patient was entitled to an ordinarily careful and thorough examination of his injuries, such as the circumstances attending their infliction, the condition of the patient, and the surgeon's opportunities for proper examination suggested and allowed. If the dislocation was discoverable by such examination, and if the physician felt that because of lack of appliances or lack of experience he was unable to treat any peculiar feature of the injury. it was at least the right of the injured man to be apprised of his condition, that he might call in more skilled attention if he desired.

Whether the verdict is sustained by the evidence need not be discussed in view of the conclusions to which we have arrived on other points of the case.

Judgment reversed, and remanded for a new trial under proceedings not inconsistent herewith.

Petition for rehearing by appellant overruled.