CASE 97.—ACTION BY LULA WARFORD AGAINST S. M. DORRIS FOR DAMAGES FOR ALLEGED UNSKILL-FUL AND NEGLIGENT TREATMENT OF A BROKEN ARM.—February 27.

# Dorris v. Warford

Appeal from Ballard Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

1. Physicians—Negligence—Damages.—The measure of damages for injuries sustained by a patient as the result of unskillful or negligent treatment by a physician is a reasonable compensation for the bodily pain and mental suffering endured, and the permanent impairment of ability to earn money, which are the natural and proximate result of such treatment.

2. Same—Degree of Care Required.—The care and skill required by a physician in treating a patient is not "his best skill and ability," but he must use that care and skill which is exercised generally by physicians of ordinary care and skill in similar communities.

J. M. NICHOLS & SON and M. T. SHELBOURN, attorneys for appellant.

HAL S. CORBETT and R. T. LIGHTFOOT for appellees.

(No briefs—record out of office.)

OPINION OF THE COURT BY JUDGE HOBSON—
Reversing.

On August 7, 1904, Miss Lula Warford had her arm
broken by the turning over of a buggy in which she
was riding at night. She was taken to the office of
Dr. S. M. Dorris at Bandana. He examined the arm
and found both bones broken between the elbow and
the wrist, and that the break of the bones was oblique
or slanting, and not square across. He put on a tempo-
rary dressing that night, and told her he would come
to her house the next day and put on a permanent
dressing. The next day he went to her father's house
with another physician. They took off the temporary
dressing and put on a permanent dressing. The arm
was very much swelled the night before when the
doctor dressed it, and was more swelled the next day.
They thought they got it straight, and that it would
heal up all right. The doctor visited Miss Warford
several times after this, and she went sometimes to his
office. Finally, she went to his office on one occasion,
and, not finding him there, left a note on his slate say-
ing that she would get another physician. For some
weeks after this he did not see her. Finally he was sent
for, and found the bandage on the arm loose. From
that time he treated her, but her arm is curved and is
not strong. There was some testimony on her behalf
to the effect that the doctor took the dressing off when
he ought not to have done so, and that this was the
cause of the crooked arm. On his behalf the testi-
mony tends to show that he removed the dressing at
her request, and upon statements made by her to him
which would justify a physician in removing the dress-

ing. She introduced some proof to show that the doctor did not pay as much attention to the arm as he should, and he introduced proof that she went about too much with the arm, and was not careful enough with it. The proof on both sides seems to show that such a fracture, where both bones are broken obliquely, is very hard to manage, and that in a large per cent. of cases where the best treatment is had a bad arm results. On these facts, the court instructed the jury as follows:

"(1) The court instructs the jury that if they believe from the evidence that the plaintiff, Lula Warford, engaged the professional services of Dr. S. M. Dorris to treat her injured arm, and that said defendant failed to exercise ordinary care and skill in such treatment as the exigencies of the case required, or such ordinary proper treatment as the defendant might have discovered to have been necessary by the use of ordinary care and skill in the examination of the injured arm, and you further believe from the evidence that by reason of such lack of ordinary care and skill upon the part of defendant, if any, plaintiff has been damaged, then you will find for her such actual damages as you may believe from the evidence she has sustained thereby, not exceeding the sum of ten thousand ($10,000) dollars, the amount claimed in the petition; and in estimating such damages, if any, you will consider the bodily pain and mental anguish suffered by plaintiff on account of the negligence of defendant in treating said arm, if any, and any permanent injury you may believe from the evidence has resulted to plaintiff from such negligent treatment, if any.

"(2) The court instructs the jury that negligence is the want of ordinary care; that ordinary care as applied to this case is that degree of care that physi-

cians and surgeons would ordinarily use in the practice of their profession of medicine and surgery—that is to say, their best skill and ability. The skill required by law in a physician and surgeon is that degree of skill possessed and exercised generally by physicians and surgeons of ordinary care and skill in the same or similar communities as was defendant located.

"(3) The court instructs the jury that unless you believe from the evidence that the defendant, Dr. S. M. Dorris, undertook to treat the plaintiff's arm, and failed to use the ordinary care and skill, as laid down in instruction No. 2, the law is for the defendant, and you should so find, although you may believe from the evidence that she sustained permanent injury to her arm, and that she suffered bodily and mental pain by reason thereof.

"(4) The court instructs the jury that if you believe from the evidence that plaintiff was guilty of negligence in failing to take proper care of herself, or to hold herself in readiness at reasonable times to be treated, and that such failure to take proper care of herself or to hold herself in readiness to be treated was the proximate cause of her permanent injury, and but for which negligence such injury would not have resulted, then the law is for the defendant, and you should so find, although you may further believe that defendant, Dr. S. M. Dorris, was guilty of negligence in the treatment of palintiff's arm."

The jury returned a verdict in favor of the plaintiff for $1,000. The court entered judgment on the verdict, and the defendant appeals.

Instruction No. 1 is erroneous in that it does not correctly define the measure of damages. It would be hard to measure in money the injury to a young woman from having a crooked arm, and sentiment

would enter into the matter, rather than the criterion
of damages fixed by law. In the recent case of Lex-
ington Railway Company v. Herring, 97 S. W., 1127,
30 Ky. Law Rep., 269, we said: "The cardinal
trouble with the instruction of the court is that in
stating to the jury the measure of damages, it author-
ized them to find for the plaintiff, among other things,
'such further sum as will fairly compensate her for
the loss of her foot.' Different people might have
very different ideas as to the amount of money that
would compensate a woman for the loss of a foot.
Such an instruction would be in effect to give the jury
no criterion of damages, and is equivalent to an
instruction to them to find for the plaintiff such sum
as they deemed right, considering the injury she had
received." In lieu of the latter part of instruction
1, the court should have told the jury that, if they
found for the plaintiff, the measure of damages was
a reasonable compensation to her for the bodily pain
and mental suffering endured by her, if any, and the
permanent impairment of her ability to earn money,
if any, which were due to the negligence of the defend-
ant in treating her arm, and were the natural and
proximate result of such negligence on his part.
Burk v. Foster, 114 Ky. 20, 69 S. W. 1096, 59 L. R.
A., 277.

The second instruction is erroneous in requiring of
the defendant his best skill and ability. The rule is that
a physician must use that care and skill which is exer-
cised generally by physicians of ordinary care and skill
in similar communities, and the court should have so
instructed the jury. Burk v. Foster, 114 Ky. 20, 24 Ky.
Law Rep. 791, 69 S. W. 1096, 59 L. R. A. 277. No man
is always at his best. One who employs a professional
man may expect from him the ordinary care and skill
of his profession. He is liable if he does not give this,

but more cannot be demanded. If the physician is responsible in any case where he does not exercise his best skill and ability, then it will be a material inquiry, and evidence may be offered to show what is his best skill and ability. This would be to introduce into the case a new and confusing issue which has never been allowed. When a person employs a physician, the law implies an agreement on his part to exercise the ordinary care and skill of the profession. The implied contract goes no further, and there is no liability on his part if the implied contract has not been broken. Were it otherwise, there would be no fixed rule in cases of this sort, and in every case the result would depend, not on the contract implied by law between the parties, but on the proof in that case as to the skill and ability of the physician. It is no defense to the physician that he used his best skill and ability if he fell short of the legal standard, and there is no liability on his part if his care and skill come up to the legal standard; for the plaintiff's cause of action rests in the end on the breach of the implied contract between the parties. In 5 Thompson on Negligence, sec. 6713, the rule is thus stated: "A physician possessing the requisite learning and skill is bound only to the exercise of reasonable care and diligence in their application to a particular case, and not the highest possible degree of care. Hence the physician or surgeon may have satisfied the legal requirements, though the care he bestowed was less in degree than that of another practitioner of even greater attainments, or even less than he himself might have bestowed on the case, where his learning and skill were greater than that of the great body of the profession. The exercise of this degree of care is the measure of professional duty in all cases without regard to the character or gravity of the injury

or disease." To the same effect, see Whitesell v. Hill (Iowa) 70 N. W., 750, 37 L. R. A., 830, and notes.

On another trial the court will omit from instruc tion 1 these words, "as the exigencies of the case required or such ordinary proper treatment as the defendant might have discovered to have been neces sary by the use of ordinary care and skill in the examination of the injured arm," and in lieu of instruction 2 he will tell the jury that ordinary care and skill on the part of the defendant is that degree of care and skill usually exercised and possessed by physicians and surgeons of ordinary care and skill in similar communities. In addition to this, he will modify instruction 3 so as to read that, unless the defendant failed to use ordinary care and skill as defined in No. 2, the jury should find for the defend ant, and that the defendant is not responsible for any bodily or mental suffering endured by the plaintiff, or any impairment of her power to earn money, which was due to her injury and would have resulted to her in any event, though treated with ordinary care and skill. By a fifth instruction he will tell the jury that negligence is the want of ordinary care, and that ordi nary care on the part of the plaintiff is such care as persons of ordinary prudence usually exercise under. similar circumstances.

Judgment reversed, and cause remanded for a new trial.