## Stevenson v. Yates.

(Decided February 7, 1919.)

## Appeal from Kenton Circuit Court.

1. Physicians and Surgeons—Injury from Want of Knowledge and Skill.—A physician or surgeon is answerable for an injury sustained by his patient resulting from want of the requisite knowledge and skill, or from his failure to use reasonable care and diligence in the treatment of the patient, including a diagnosis of the case so as to discover the patient's malady; and the standard of skill which the physician should possess and the care which he should exercise is that skill and care and diligence possessed and exercised by physicians in similar neighborhoods and similar surroundings and engaged in the same general line of practice.

2. Appeal and Error—Directed Verdict.—A directed verdict is not authorized unless after admitting all of the testimony introduced by the one against whom it is directed, and after fair and reasonable inference that might be deducible therefrom, he has failed to make out a case; and this rule prevails although the court would be authorized to set aside the verdict if one should be returned against the litigant making the request.

3. Physicians and Surgeons—Injury from Want of Knowledge and Skill—Evidence.—A pregnant woman applied to defendant, a practicing physician, for treatment. Defendant diagnosed the case as kidney trouble and gave plaintiff some strong medicines that after taking produced pains and nausea and made plaintiff nervous. After four months plaintiff, who was forty-two years old and never been pregnant before, suggested the possibility of pregnancy and defendant said no, that the pain and enlargement were due to gas in plaintiff's stomach and gave her more strong medicine and advised her to continue her work, which she did, until she was stricken with labor pains after which she gave birth to a dead child. Held, that a peremptory instruction to find for defendant at close of plaintiff's testimony was improper.

B. F. GRAZIANI for appellant.

ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and defendant below, S. Annie Yates, is a physician and maintains an office in the city of Cincinnati, Ohio. The appellant and plaintiff below, Mrs. Louise Stevenson, is a married woman living in Covington, and at the time of the matters herein complained of she was about forty-two years of age, having been married about fifteen years and had never borne children.

Defendant had been plaintiff's physician for some ten years or more, but it had been some time prior to February, 1915, since defendant administered in any way to plaintiff. On that day plaintiff visited defendant's office and stated to her certain symptoms which plaintiff had experienced and was experiencing, and at the time requested defendant to take charge of her case and submitted herself to defendant for proper treatment. This, of course, required as a prerequisite a proper diagnosis of plaintiff's affliction. Defendant made no physical examination but stood behind the plaintiff while she was seated in a chair and held plaintiff's hands for about ten minutes when she told plaintiff that she was suffering with kidney trouble. The symptoms which

plaintiff related to defendant were that she was suffer-
ing with shortness of breath, with pains in her back and
stomach and perhaps some others. At that time defend-
ant prescribed for plaintiff and gave her different kinds
of medicines, to be taken at prescribed times, sufficient
to last for three weeks, during which time plaintiff was
required to and .did report to defendant her condition.
Plaintiff continued to visit defendant's office at periods
of about three weeks apart, each time reporting her con-
dition and symptoms as well as the effect of the medi-
cines until some time in June, when, not having been im-
proved, and having experienced, as she says, a crawling
sensation in the lower part of her abdomen, which she
at that time reported to defendant and asked her if it
could be possible that she was pregnant. Defendant told
her that she was not pregnant but that she was suffering
with stomach and kidney trouble, and that her condition
was approaching near Bright's disease.

Another quantity of medicine was prescribed and
plaintiff commenced to visit defendant's office more fre-
quently and continued to do so until the 15th day of
October in that year. Throughout the whole time plain-
tiff had no periods of menstruation, they being entirely
suppressed, a fact which defendant also knew.

On the 19th day of October, four days after plaintiff's
last visit to defendant's office, there appeared a slight
hemorrhage from plaintiff's privates of which defend-
ant was notified by telephone as well as notified of other
conditions and symptoms of plaintiff; and defendant ex-
pressed satisfaction over what she said was a return of
plaintiff's menses, and asked plaintiff to visit her office
on the following Saturday, which was the 23rd of Oc-
tober.

Plaintiff continued to take defendant's treatment al-
though suffering considerably and her condition not im-
proving until Saturday morning, when another physician
was called in, who discovered that plaintiff was then in
labor and about to become a mother. She was removed
to a hospital where, about seven o'clock that night, a
fully developed dead child was taken from her with the
aid of instruments, after administering to her an anes-
thetic.

She stayed in the hospital about two weeks and re-
turned home in a weakened condition and very nervous.

It became necessary, some sixty days thereafter, to return to the hospital, where a slight operation was performed due to conditions resulting from the childbirth. Her weakened and nervous condition continued from that time, according to her testimony, till the day of the trial.

Plaintiff brought this malpractice suit against defendant alleging unskillfulness in properly diagnosing her case, and both unskillfulness and negligence in the treatment administered as well as advice given relative to plaintiff's conduct while in a state of pregnancy. She alleged that the medicine administered was of a very strong character and produced pains and rigors within about one hour after being taken, causing plaintiff to become nauseated and very nervous. She furthermore alleged that defendant improperly advised her to continue to do her house work, which she had done throughout her married life, and whilch consisted in cooking, washing, ironing and general house cleaning, together with operating a sewing machine, and perhaps other labor which it was charged was improper to be performed by a pregnant woman.

The answer was a denial only of the negligent acts charged. Upon the trial and at the close of plaintiff's testimony the court sustained the defendant's motion for a peremptory instruction for the jury to find in her favor, which resulted in a verdict accordingly, followed by a judgment dismissing the petition, and to reverse it plaintiff prosecutes this appeal.

The law is well settled in this, and we believe in all jurisdictions, that a physician or surgeon is answerable for an injury to his patient resulting from want of the requisite knowledge and skill or from the omission to use reasonable care and diligence in the treatment of the patient or to exercise such care and diligence to discover the patient's malady. 21 R. C. L. 379; Dorris v. Warford, 124 Ky. 768; Vanmeter v. Crews, 149 Ky. 335; Acton v. Smith, 150 Ky. 703; Mason, et al. v. Meloan, 165 Ky. 582; Burk v. Foster, 114 Ky. 20, and Barnett's Admr. v. Brand, 165 Ky. 616.

Concerning the standard of knowledge and skill and the required care which the physician should possess and exercise under this rule, it is quite generally agreed that he is bound to bestow such reasonable and ordinary

care, skill and diligence as physicians and surgeons in similar neighborhoods and surroundings engaged in the same general line of practice ordinarily have and exercise in like cases. R. C. L., *supra,* 381, and cases above referred to.

Plaintiff, upon the trial, after testifying in substance as hereinbefore indicated concerning the diagnosis of her case, the beginning of the treatment, etc., said: "Q. What happened after you took some of this medicine? A. Well, I continued to stay the same. I never got any better. I would feel sick, cramps in my limbs and shortness of breath. Q. Now you began to take the medicine in February? A. Yes, sir. Q. And that continued right along? A. Yes, sir, every day. Q. How soon after you took any of this medicine did you feel any pains in the stomach and have to vomit and stiffness of limbs, how long was that? A. That was all during the time. I felt that way all the time. Q. Was there any period after you began to take the medicine that you did not feel the stiff limbs, pains in the stomach and have to vomit; was there any time after you took the medicine that you did not feel this? A. There was times that I did not take the medicine, and I felt better without it. Q. That you did not feel the stiffness of limbs, pains and vomiting? A. I felt that way nearly all the time that I took the medicine. Q. How soon after taking the medicine did you begin to feel sick. A. About an hour afterwards."

She then testified in substance that in June or July she began to feel different and explained her changed symptoms to defendant, including the crawling sensation in her abdomen, when plaintiff told her she had a very powerful gas in her stomach and gave her medicine for it. From time to time thereafter she continued to inquire about the fact of her pregnancy and as late as the 15th of October this occurred. "Q. Tell the jury what occurred in October. A. She gave me the same potion to take. Q. What did she say to you? A. Said it still existed; that it was my kidneys and she wanted to get them cleared up. Q. Did you say anything to her about being pregnant? A. Yes, sir, I did. Q. What did you say to her in October, the 15th? A. Just the same as always, and then I took this (hemorrhage) on Monday night. Q. But what did she say when you told her you was pregnant? A. I told her I felt as

though something was crawling in me and she would laugh, and furthermore there was a little form right here below the abdomen, and I asked her about that and she laughed and said 'you are going through the change of life, and women can have nothing at that time.' ''

She further testified: ''Q. What else did she tell you with reference to your exercise? A. She said no kind of work would hurt me. Said not to go to picture shows.''

Upon this advice plaintiff testified that she continued to do her household work, including sewing upon the machine almost daily, and performing other labors necessary to the running and keeping up of a house of some six or seven rooms, in which she and her husband resided; and that she would not have done this had she known that she was pregnant.

Physician witnesses testified that it is not best for a mother carrying an unborn babe to engage in exercise requiring much effort. In addition to the pain producing, nauseating and other effects of the medicine about which plaintiff testified it is shown by witnesses introduced by her that the process by which her child was taken from her was more painful and possibly more productive of impairing consequences to the mother than if the delivery had occurred in the normal way; and furthermore that the character of exercise which plaintiff took under the advice of defendant was calculated to seriously affect the mother and possibly produce the death of the unborn child.

Medical witnesses testified that at least three or four months after conception it is quite easy for a member of the profession to discover and detect pregnancy and that it is not a difficult task before that time.

The rule is universal in this jurisdiction that before the court is authorized to direct a verdict it should be prepared to say that admitting all of the testimony by the one against whom the verdict is directed and every fair and reasonable inference that might be deducible from it, he has failed to make out his case. Shay v. R. L. & T. P. R. R. Co., 1 Bush 108; United Shakers v. Underwood, 11 Bush 265; L. & N. R. R. Co. v. Howard, 82 Ky. 212; Baumeister v. Markham, 101 Ky. 122; Thompson v. Thompson, 17 B. Mon. 23; Dallman v. Handley, 2 A. K. Mar. 418; Buford v. L. & N. R. R. Co.,

82 Ky. 286, and L. & N. R. R. Co. v. Johnson's Admr., 161 Ky. 824. And this rule prevails although the presiding judge be of the opinion that if the jury should find adversely to the litigant making the request for such instruction, he would be compelled to sustain his motion for a new trial. Buford v. L. & N. R. R. Co., *supra;* Thompson v. Thompson, *supra;* and Payne Clothing Co. v. Payne, 21 Ky. Law Rep. 1226.

Under the rule thus prevailing in this state we cannot escape the conviction that the court was in error in directing a verdict in favor of defendant. The motion for a peremptory instruction is in the nature of a demurrer to the evidence and admits the truth of all the evidence introduced by the litigant against whom the verdict is directed. It is therefore admitted in this case that defendant was either greatly unskillful or grossly negligent in failing to properly diagnose plaintiff's case, and because of that or for other reasons equally negligent or unskillful, wrongfully advised her as to the exercise she should take and the labor she should perform, and in addition gave her medicines of sufficient strength to at once produce pain, rigors, nausea, nervousness and other weakening and debilitating effects.

It is true that it does not appear what was the quality or character of the medicines prescribed, but we think, in a case like this, where the plaintiff is wholly ignorant as to such facts, that when he shows the effects and consequences which the taking of the medicine produced the burden shifts to the defendant to show that such consequences and effects were not the results of the medicine. And furthermore that the defendant under facts similar to what we have here should be called upon to show that the advice given as to exercise and labor could not and did not produce injurious results.

We are not now called upon to determine the question whether the death of plaintiff's child would be a proper element of damage in a suit by the mother should the proof show it to have been brought about by the unskillful and careless treatment of defendant, since that question is not now before us, but we do hold that plaintiff's testimony was sufficient to authorize a finding that defendant was negligent and unskillful and that as a consequence thereof defendant suffered some pain and sustained some damages which the jury would have been

authorized to find under proper instructions from the court.

Wherefore the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.