## Elam's Administrator v. Botkin.

(Decided January 25, 1929.)

518

S. C. DUFF and H. C. EVERSOLE for appellant.

J. W. CRAFT for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is a malpractice suit brought by appellant, Bert Williams, as administrator of the estate of J. B. Elam, deceased, against the appellee, a physician and surgeon, to recover damages because of the death of plaintiff's decedent, which he alleges was the proximate result of negligence on the part of defendant in performing an operation upon decedent for the removal of his tonsils and failing to properly treat him thereafter. At the conclusion of the evidence for the plaintiff, the trial court peremptorily instructed the jury to find for the defendant, and plaintiff has appealed.

The only question on this appeal is whether or not there is sufficient evidence to authorize a submission of the case to the jury.

Members of decedent's family testified that for several days prior to April 16, 1927, when his tonsils were removed, his throat was swollen and inflamed. The operation was performed at the hospital in Hazard, and after the operation the defendant returned with the decedent to the latter's home. He again visited the decedent at the latter's home at 4:30 o'clock on the afternoon of the same day and instructed a member of the family to call him if decedent had a hemorrhage. At that time it does not appear that any symptoms had developed tending to indicate that the operation was not entirely successful. On the following morning the decedent became much weaker, and members of his family sought to locate the defendant, but it was ascertained that he had left Hazard on the preceding night. A number of other physicians and surgeons lived in Hazard, and at least four of these were called and examined the decedent during the day, and at 6:00 p. m. he was removed to the hospital at the suggestion of one of these physicians, where he died during the same night. Four of the physicians who attended plaintiff's decedent on the day following the operation were introduced as witnesses for the plaintiff. These physicians testified that it is not safe to remove tonsils when they are in an inflamed condition,

since an operation under such circumstances is more likely to result in a hemorrhage or infection. They all testified that no hemorrhage resulted, that the operation was clean, and that there was no evidence of any infection as a result of the operation. None of them were able to state the cause of decedent's death.

Dr. B. M. Brown testified that at 6 o'clock p. m. decedent's temperature was 99.6, normal being 98.6, and that at 12 o'clock, shortly before his death, his temperature was 100, and that his temperature did not indicate that he was suffering from septicaemia.

A copy of the death certificate, which purported to be signed by Dr. N. G. Riggins, was offered, but Dr. Riggins failed to identify it as a true copy of the original, and Dr. J. P. Boggs, the registrar of vital statistics, testified that the original had been filed with the state board of health, and that the one offered was not a true copy of the original. The trial court properly rejected the offered copy, and neither the original nor a certified copy thereof was offered in evidence.

An effort was made to show that the defendant was negligent in failing to remain in Hazard and treat the decedent following his operation or make provisions for such treatment during his absence. It does not appear, however, that the death of plaintiff's decedent resulted from lack of attention or proper treatment following the operation. As soon as it was discovered that the defendant's presence could not be procured a number of other physicians were called. Likewise there is no evidence tending to show that the death of plaintiff's decedent resulted from any negligence or unskillfulness on the part of the defendant in performing the operation. On the other hand, all of the witnesses, qualified to speak on this point, testified that the operation was a clean one, and that no hemorrhage or infection resulted therefrom. To submit the case to the jury under such a state of facts would be to permit them to speculate as to the cause of decedent's death. In Kirby's Administrator v. Berea College, 196 Ky. 353, 244 S. W. 775, it is said: "Physicians and those having in charge the treatment of patients are not required to insure their recovery; their measure of duty is to possess such knowledge and skill as possessed by others similarly engaged in like communities and to exercise ordinary care in the application of such knowledge and skill. Stevenson v. Yates, 183 Ky.

520

196 (208 S. W. 820). That duty does not require the performance of every act which the most cautious and skillful would employ, and before liability will attach it must appear that the damages sued for were the proximate result of some alleged act of omission or commission on the part of the defendant in malpractice cases. Barrett's Admr. v. Brand, 179 Ky. 740 (201 S. W. 331). Mere speculation or remote probability is not sufficient to fix liability." Even if it is conceded that there was proof of want of reasonable and ordinary care or skill, there is no evidence tending to show that the death of Elam was the proximate result of such want of care or skill on the part of defendant.

It follows that the trial court properly sustained the defendant's motion for a directed verdict in his favor.

Judgment affirmed.