## Tanner v. Sanders.

(Decided Jan. 24, 1933.)

TRABUE, DOOLAN, HELM & HELM for appellant.

CARROLL & McELWAIN and L. R. CURTIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, L. R. Tanner, asked a large sum in damages of the appellee, Dr. H. E. Sanders, for alleged malpractice. The verdict was for the defendant.

The appellee is a dentist in Louisville, specializing and engaging principally in the extraction of teeth, and is known as an exodontist. The evidence is, in short, that the plaintiff developed pyorrhea and it became necessary to remove a tooth. He was sent or taken to Dr. Sanders by his regular dentist, Dr. Pfingst, and Dr. Sanders extracted the tooth. The plaintiff's claim is that he was thereafter neglected, and the postoperative treatment was not the proper one. A serious condition did arise from infection in and around the cavity, and the plaintiff certainly suffered the most excruciating pain for weeks and months. He testified that he returned to the defendant's office seeking relief every day for four days, but received none, and progressively grew worse. He then went under the care of physicians and surgeons, and spent about two months in a hospital, during which he came close to death's door. He underwent several surgical operations in which portions of his jawbone were removed, and he was left permanently scarred. He spent about $2,000 for surgeons' services, hospital expenses, etc., and lost time from work of the value of a little over $1,000.

In his suffering, he felt that the doctor was neglectful, and his testimony does indicate an indifference and unsympathetic consideration on his part. But as measured by legal standards, the evidence of neglect and improper treatment on the part of the defendant was not strong; nor was the evidence tending to show that the subsequent condition was the proximate result of the tooth extraction. The defendant and a number of other skilled dentists and general surgeons testified that approved methods had been used and the proper care

had been given the patient, and that his serious infection probably came from other causes.

As we approach the consideration of the legal questions, it may be pointed out that in the performance of services within their own profession, dentists, as being of a kindred branch of the healing art, are subject to the same rules that govern the duties and liabilities of the general physicians and surgeons. Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311, 69 A. L. R. 1135; 21 R. C. L. 386; 48 C. J. 1116. And the skill and prudence of one who holds himself out as a specialist in a particular branch of his profession are to be measured by those of a similar class. 21 R. C. L. 387. Annotations, 59 A. L. R. 1071.

1. It is submitted as a ground for reversal of the judgment that the court erred in instructing the jury that:

> "By the terms 'ordinary care and skill' as used in these instructions, is meant such care and skill as is generally employed by ordinarily careful and skillful exodontists in the community of Louisville, under like or similar circumstances.
>
> "'Negligence' is the failure to exercise ordinary care and skill."

In the respect that the standard of duty of physicians and surgeons depends upon the locality of practice, the authorities in other jurisdictions are by no means in accord. There appears also some lack of uniformity in our own opinions. Some foreign authorities hold that the skill and care required is that of those engaged in the same locality, vicinity, community, or neighborhood, or the same general neighborhood. Others set up the standard as that care exercised in similar localities or neighborhoods; while others use both expressions "same or similar localities." 48 C. J. 1117. In 5 Thompson on Negligence, page 1081, after referring to the statements in the opinions that the skill required is that ordinarily possessed by medical men in the locality where the particular physician is engaged in practice as being "loosely said," and discussing the unsoundness of that rule, the author concludes:

"The better and more generally accepted rule re-

quires the physician, surgeon, or dentist to possess the skill, learning and experience ordinarily possessed by members of his profession at the time in similar localities and with similar opportunities for practice."

See, also, 3 Shearman & Redfield on Negligence, sec. 608.

This court condemned an instruction, similar to that given in this case, which defined the degree of care and skill required of a physician in attending a broken arm to that which "ordinarily skillful and prudent physicians and surgeons in the vicinity" would have exercised in treating a like injury. Burk v. Foster, 114 Ky. 20, 69 S. W. 1096, 24 Ky. Law Rep. 791, 59 L. R. A. 277, 1 Ann. Cas. 304. "We think," said the court then, "the sounder rule is, not that the physician's skill and degree of attention should be measured by those of his community, but by such as is exercised generally by physicians of ordinary care and skill in similar communities." In the case at bar the plaintiff offered, and the court refused, an instruction in accord with that rule.

In reasoning to the conclusion of the Burk Case, a premise was that the place where the operation was performed by a local physician was a small village, isolated in a rural community, where there were insufficient comparative standards by which to measure the degree of skill. There are convincing reasons for requiring the skill generally exercised in similar communities instead of a particular locality as are stated in that opinion and given in 21 R. C. L. 385, and elsewhere.

There is no disposition to depart from the rule laid down in Burk v. Foster, supra, where the conditions or locality are similar to those involved in that case. The question is whether the same standard and same rule should obtain where the particular locality is a city of some 350,000 inhabitants, and where there are many skillful practitioners of the profession.

The rule in the Burk Case was followed in Dorris v. Warford, 124 Ky. 768, 30 Ky. Law Rep. 963, 100 S. W. 312, 9 L. R. A. (N. S.) 1090, 14 Ann. Cas. 602, where the alleged malpractice was in a rural community, and

the expression in the instruction "same or similar community" was condemned.

In several of our opinions it has been observed generally that the duty of physicians and surgeons is to be measured by the skill possessed and exercised by others similarly engaged in "like communities" or "a similar community," without any special reference to the instructions or the particular localities. Kirby's Adm'r v. Berea College, 196 Ky. 353, 244 S. W. 775; Stevenson v. Yates, 183 Ky. 196, 208 S. W. 820; Elam's Adm'r v. Botkin, 227 Ky. 517, 13 S. W. (2d) 507; Prewitt v. Higgins, 231 Ky. 678, 22 S. W. (2d) 115. In those cases the operations or services upon which the suits were based appear to have been in small cities or rural communities, except the Stevenson Case, which involved a Cincinnati doctor.

But the term "in the vicinity" was used in writing generally in Knopp v. Thornton, 199 Ky. 216, 250 S. W. 853, where the physician lived in Marion county. The case was reversed upon the ground that a directed verdict had been erroneously given, and the expression was used without regard for the specific point.

In Van Meter v. Crews, 149 Ky. 335, 148 S. W. 40, 41, which is a malpractice case coming out of Lexington, in criticising the instructions that were given and in outlining those to be given upon another trial, that part of the instruction which localized the standard of skill and care as that "usually possessed by the profession of surgeons generally in this section of the country" was accepted by this court as proper.

In Hoover v. McCormick, 197 Ky. 509, 247 S. W. 718, 721, there is quoted that portion of the Stevenson opinion containing the statement that it is quite generally agreed that the skill and diligence required of physicians and surgeons is that exercised "in similar neighborhoods and surroundings"; yet when considering the instructions given in that case it is said that the treatment should be measured by the degree of skill and care as "that usually and ordinarily possessed by others engaged in the same profession in the same locality, and which locality is not the place where the services are rendered, but the place where the defendant is stationed and located, and where he engages in the practice of his profession." The defendant was

practicing in Owensboro, which at that time had a population of about 20,000, and contained many physicians possessing a high degree of skill.

In Leadingham v. Hillman, 224 Ky. 177, 5 S. W. (2d) 1044, a case from Ashland, the statement in 21 R. C. L. 381, that the duty of a physician is to exercise such ordinary care, skill, and diligence as physicians and surgeons in the vicinity ordinarily have and exercise, is cited with approval.

It appears, therefore, that in considering the instructions in particular cases, this court has made a distinction between the practice in rural and urban communities, although that distinction has not been specifically noted. Such a distinction and the reasons for it are recognized in Shearman & Redfield on Negligence, sec. 608; Small v. Howard, 128 Mass. 131, 35 Am. Rep. 363; McBride v. Huckins, 76 N. H. 206, 81 A. 528 (where the subject is treated at length); Turner v. Stoker (Tex. Civ. App.) 289 S. W. 190; Evans v. Clapp (Mo. App.) 231 S. W. 79. It is, however, criticized as being unsound in Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L. R. A. 1916D, 644, Ann. Cas. 1917E, 678, upon the ground that the country practitioner has opportunities equal to his city brethren for knowledge and development of skill, and the same degree of care ought to be required of both.

In Pelky v. Palmer, 109 Mich. 561, 67 N. W. 561, the court criticized an instruction that the defendant was required to use only the degree of care and skill of physicians in his "neighborhood," but said:

> "Yet, in view of the testimony showing that the defendant resided in one of the cities of the state, where, as the evidence shows, there are other physicians, presumably of average ability, when compared with similar localities, we see no indication that the plaintiff was injured, especially as there was nothing to indicate a claim that such physicians were below the general standard in such localities."

In respect to the case at bar, coming as it does from the largest city in the state, where there is as high a standard of professional skill as may be found in this country, we cannot regard as an error the instruction which required the defendant to exercise such

care and skill as is generally employed by ordinarily careful and skillful practitioners of the same class "in the community of Louisville under like or similar circumstances."

2. The first instruction stated the defendant's duty and authorized a verdict for the plaintiff if the jury should believe he failed in respect to it, and by reason of such failure, if any, the plaintiff was injured. The second instruction was as follows:

"If you believe from the evidence that the defendant, Dr. H. E. Sanders, after he extracted the second molar tooth from the lower left jaw of the plaintiff, exercised ordinary care and skill in the treatment of the tooth socket; or, even though you may believe from the evidence that the defendant was negligent, in that he failed to exercise ordinary care and skill in the treatment of the tooth socket of the plaintiff, yet if you further believe from the evidence that such failure, if any, of the defendant to exercise such care and skill, was not the proximate or direct cause of the infection to the plaintiff's lower left jaw, then in either of the events mentioned in this instruction, the law is for the defendant, Dr. H. E. Sanders, and you will so find."

The point is made that the instruction was erroneous in that it stated the law was for the defendant unless the jury believed the plaintiff's injuries were either the direct or the proximate result of the negligence instead of confining it only to the proximate result; an alternative condition not authorized.

In the several malpractice cases we have had, it appears the instructions only required that the injury sustained should have been the proximate result of the claimed negligence. There is a nice, technical difference between direct and proximate causes. A cause may be proximate, although not direct (in the sense of an immediate or consecutive production); but if it is direct in that sense, it is, of course, likewise proximate. An injury may be the natural, probable, and legitimate consequence of a negligent act, although there may have been an act or train of events intervening between the commission of the wrong and the happening of the injury. Stephens v. Stephens, 172 Ky. 780, 189 S. W. 1143. When that is the condition, the wrong is never-

theless regarded as the direct and dominant cause, for it operated directly to produce the injury. In such a case, one who is careful as to word distinctions may not regard the negligent act as the "direct cause." But it is a common form to couple the words in instructions such as "direct and proximate" causes, or "direct and proximate" result. In the form of instruction directed to be given upon a retrial in Interstate Coal Company v. Love, 153 Ky. 323, 155 S. W. 746, 747, the words were joined disjunctively and read "direct or proximate," as in the instant case.

It may well be regarded that in the instruction before us the words were used as synonymous and not as alternatives. The words are synonyms. Webster's International Dictionary. It is a common form to use both words in instructions, as will be found from examination of our opinions. Under the facts of the case, and considering the instructions as a whole, although the combined form was not precisely accurate, we do not regard its use as prejudicial to the substantial rights of the plaintiff.

3. Another ground submitted for reversal is that the evidence did not justify a contributory negligence instruction. There is little substantial evidence of any contributory negligence by the plaintiff, and his admitted suffering almost from the time his tooth was extracted would negative any inattention on his part. The defendant testified in contradiction of the plaintiff (who said he had visited the doctor's office daily seeking relief and found none), that he had given directions for the treatment of the socket and the relief of his pain, and advised him to return if trouble developed, but the patient did not return for treatment until four days later. This seems sufficient to warrant a conclusion that the plaintiff neglected to care for himself, and the giving of the instruction was not an error.

4. Complaint is further made of some impropriety of the defendant's counsel in having read or referred to a portion of a medical text-book in his argument. Waiving the question as to whether this matter is sufficiently presented by the bill of exceptions, the judge certifying only that it was claimed by the plaintiff that such had been done (see Allgeyer v. Allgeyer's Executors, 244 Ky. 450, 51 S. W. (2d) 445), we may say

that after a consideration of the facts we can see no merit in this point.

It appearing that the plaintiff received a fair trial of his cause, the judgment is affirmed.