## Van Sant's Administrator v. Overstreet et al.

(Decided Sept. 27, 1935.)

HOWARD & MAYO for appellant.
HUNT & BUSH and W. M. GARDNER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

On January 27, 1932, and prior thereto the appellee and defendant below, W. H. Wheeler, was a practicing physician in West Liberty, Ky., and was health director for his county of Morgan. As such officer, he became acquainted with the fact that a great many children in the county were suffering from diseased tonsils, and that they should be operated on and their tonsils removed. He arranged with the defendant Dr. T. J. Overstreet, who resided in Lexington, Ky., and who was an eye, nose, and throat specialist, to assist him in conducting the clinic for the purpose of such operations to be held in the courthouse at West Liberty on January 25th, 26th, and 27th of that year, 1932. Notice of that fact was published in the local paper, and appellant and plaintiff below, Vernon Van Sant, on the day indicated carried his son, Phillip Van Sant, who was then nine years and five months old, to the courthouse where the clinic was being conducted for the purpose of having his tonsils removed if he was found to be in condition to withstand the operation and undergo the necessary anesthetic application for the purpose. After being placed on the improvised operating table, the defendant and appellee below, Mary F. Harnett, an anesthetist whom Dr. Overstreet had carried along for the purpose, administered to appellant's son an anesthetic, when he at once began to show and develop suspicious and alarming symptoms which were then recognized and the physicians immediately took action to avert calamitous consequences, but were unable to do so, and within a very short time after entering the operating room young Van Sant expired.

This action was later filed in the Morgan circuit

court to recover $60,000 as damages for the alleged negligently produced death of plaintiff's decedent. In his petition plaintiff averred numerous acts of negligence and violations of duty on the part of defendants as grounds for their liability and in support of the recovery sought therein. In the main they were: (a) Failure on the part of the defendants to possess the requisite skill to perform the task that they undertook; (b) negligence in such performance, even if they did possess the requisite skill; (c) that charges (a) and (b) also applied to the defendant Harnett and that the other two physician defendants knew of her unskillfullness as an anesthetist, but suffered and permitted her to act and perform as such; and (d) that such other physician defendants failed to perform their alleged duty of supervising the anesthetist defendant while she was performing her part of the operation, and that she was their agent and they were responsible to plaintiff and his decedent for her unskillfulness and negligence.

The answer denied (as we interpret it, although some contention is made to the contrary by plaintiff's counsel) the material averments of the petition and affirmatively averred the exercise of the requisite skill and care on the part of defendants, and such issues were sharply developed by the pleadings upon trial. At the close of plaintiff's testimony, which included the cross-examination of defendants, the court sustained the latter's motion for a peremptory instruction in their favor, followed by an order dismissing the petition upon the verdict so rendered. Plaintiff's motion for a new trial was overruled, followed by his prosecuting this appeal.

A motion has been made in this court to strike the bill of evidence and the bill of exceptions from the record upon the ground that they were not filed in the trial court within the time, or within any legally extended time, prescribed by section 334 of the Civil Code of Practice. That motion was passed to a hearing of the appeal upon its merits and which we will now dispose of.

The motion for a new trial was overruled at the same term at which the verdict was rendered and in the same order overruling it this further one was made: "It is further ordered upon motion of plaintiff that he be, and he is hereby given up to and including the last

day of the next regular term of this court within which to tender and offer his bill of Exceptions herein.'' The judgment was rendered at the regular December, 1933, term of the court. Its next regular term began on the fourth Monday in March, 1934, and continued for twelve juridical days. On the second day of that term, which was on the 27th day of March, plaintiff's bill of exceptions was tendered, approved, and filed, which, it will be observed, was ten days before the last day of that term and was, therefore, clearly within the time allowed therefor by the order extending it, if that order as worded was within the controlling provisions of section 334, supra, of our Civil Code of Practice.

Learned counsel for defendants by what we conceive to be false logic strenuously contend that ''the last day of the next regular term of this court,'' as embodied in the extending order, was not a fulfillment of the requirement of the Code section that the extended time should not be beyond ''a day in the succeeding term, to be fixed by the court.'' It seems to be conceded by them that if the court had said in its extending order that the time was given until ''the 12th [which was the last day of that term] day of the next regular term of this court,'' it would have been sufficient. But they profess to discern a marked and material distinction between the ''last day'' of the next regular term of the court and a numerically designated day of that term, and they cite and rely on the cases of Smith v. Blakeman, 8 Bush, 476, and United States F. & G. Co. v. Cole's Adm'r, 165 Ky. 823, 178 S. W. 1057, in support of their argument. But those cases are wholly inapplicable to the facts of this one and to the situation as here presented. In the Blakeman Case time was given until the third day of the next succeeding regular term within which to file the bill of exceptions and on that day the bills had not been completed, and on appellant's motion ''further time is given them to complete and file same.'' The court held that the second extending order was wholly indefinite as to the measurement of time given or any limitation of it. Therefore, it was held that the bill of exceptions filed thereafter was improperly a part of the record and could not be considered by this court. When the bill of exceptions was presented in the Cole Case on the last day of the extended time, there was no order tendering time for filing them or referring thereto in any other manner, except

one stating that the day for it to be done "is passed until a later day during this term of court," and that the court stenographer, who had not finished transcribing the testimony in the case, "is given further time during the present term of court to do so." It, therefore, clearly appears that in both of those cases the ultimate time attempted to be fixed for the filing of such documents was wholly indefinite and completely at variance with the requirements of the section of the Civil Code, supra, and they have no material application whatever to the facts of this one.

On the other hand, the logic of the situation clearly points to the conclusion that the contention of defendants' counsel on this motion is fallacious. The very language of the section of the Code under consideration unerringly indicates that the maximum limit of extended time for filing the bills of exceptions shall be "a day" in the succeeding term, and which means "any day" of that term which the court might designate in its extending order. The order under consideration fixed that day as the "last day" of the term, which, as we have seen, was the twelfth day thereof, and, as we have pointed out, it is conceded that if the latter word had been employed to designate the limits of the extended time, it would have been sufficient. Therefore, we see no basis whatever for sustaining the motion, even if we had made no prior pronouncements upon the subject. But the question of practice was expressly determined adversely to counsels' contention in the case of Charles v. McCoy, 220 Ky. 439, 295 S. W. 407, 408. In that case the first extending order was "until the last day of the next term" within which to file the bill of exceptions. Before the expiration of that term, they were tendered and filed, and in acting upon a similar motion, we said: "The bill was therefore tendered in time." No doubt other cases could be cited to the same effect for we are confident that such conclusion would have been adopted whensoever the question was presented. There is no room or basis for any other one, and we have been unable to find any case, nor have we been cited to any, holding to the contrary and sustaining counsels' contention. The motion to strike the bill of exceptions, therefore, is overruled, and which brings us to a consideration of the merits of the case.

In the case of Stevenson v. Yates, 183 Ky. 196, 208 S. W. 820, 822, the measurement of the legal duties of

and the obligations assumed by physicians and surgeons is thus stated: "The law is well settled in this and we believe in all jurisdictions that a physician or surgeon is answerable for an injury to his patient resulting from want of the requisite knowledge and skill, or from the omission to use reasonable care and diligence in the treatment of the patient or to exercise such care and diligence to discover the patient's malady. 21 R. C. L. 379; Dorris v. Warford, 124 Ky. 768, 100 S. W. 312, 30 Ky. Law Rep. 963, 9 L. R. A. [N. S.] 1090, 14 Ann. Cas. 602; Van Meter v. Crews, 149 Ky. 335, 148 S. W. 40; Acton v. Smith, 150 Ky. 703, 150 S. W. 854; Mason et al. v. Meloan, 165 Ky. 582, 177 S. W. 435; Burk v. Foster, 114 Ky. 20, 69 S. W. 1096, 24 Ky. Law Rep. 791, 59 L. R. A. 277, 1 Ann. Cas. 304; Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S. W. 461. Concerning the standard of knowledge and skill and the required care which the physician should possess and exercise under this rule, it is quite generally agreed that he is bound to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in similar neighborhoods and surroundings engaged in the same general line of practice ordinarily have and exercise in like cases. R. C. L. 381, and cases above referred to."

The applicable law as so stated in that opinion is conceded to be correct. It is approved by text-writers on the subject as well as court opinions universally, and it has been done by this court in cases prior to the rendition of the Stevenson opinion as well as others that have been rendered since then. For that reason, it is unnecessary to encumber this opinion with a citation of additional ones from this court approving the same statement. Within the duties and obligations therein laid down are embraced the necessary diagnosis of the patient's physical condition and to ascertain whether or not it is such as that he may be reasonably expected to undergo or withstand any required action as a necessary part or portion of the treatment proposed to be administered. It has, therefore, been held with equal universality that a physician or surgeon who administers or procures the administration of an anesthetic preparatory to a surgical operation is required to possess the same degree of skill and has imposed upon him the same obligations that is contained in the excerpt, supra, from the Stevenson opinion.

It was alleged in the petition, in substance, that the

physical condition of decedent (the patient in this case) was in such a state of impairment at the time as to render it entirely unsafe and dangerous to administer to him the anesthetic that was attempted to be done, and that such condition was imparted to the defendants at the time before such administration was attempted. Furthermore, that the physician defendants did not subject decedent to anything more than a cursory examination and which was done in a mode and manner as not to develop the true situation; but which could have been done by the exercise of the proper degree of care and skill, which they failed and refused to do or possess; that they were aware, and so stated at the time, that decedent had just emerged from an attack of the flu; that he had been afflicted for quite awhile with rheumatic fever; and that he had a rheumatic heart. Plaintiff testified that he so informed the operating defendants at the time and that independently of his information they knew such condition to exist, and one of them at least, in the presence of the other, so expressed himself before attempting the operation. It was proven by at least one physician witness, in substance, that a patient whose general system was in a more or less poisoned condition, as above stated with reference to that of the decedent, should not be administered an anesthetic of the character and kind used in this case (or perhaps any other kind), but that the surgeon whose patient he was should first subject him to the proper treatment to eliminate the poison in his system and to better prepare him for the reception of the anesthetic. It was also shown that not to do so was a departure from the proper practice, and which it would seem would inevitably be so without the confirmation of a professional witness.

More than one witness testified to some of the facts referred to and which, if true, tended to establish the allegations of the petition that the two defendants referred to either did not possess the requisite skill to discharge the task they assumed to perform, or that they negligently and carelessly exercised their skill in this case. Such testimony also tended to prove both charges, either of which if true would render the guilty defendants liable. Plaintiff and others also testified that substantially all the examination made of decedent was possibly a feeling of his pulse, an observation of him by sight, looking into his throat with the naked eye,

and the application of a stethoscope. Plaintiff testified that no thermometer was used to ascertain his temperature, nor was there (according to some of plaintiff's testimony) the employment of any of the modern clinical methods whereby the actual condition of the patient could be determined. However, defendants testified (and supported it by other witnesses) that what they did do on the involved occasion was in accordance with the duties imposed by the applicable law, since the methods employed to ascertain defendant's condition were sufficient for the purpose. Whatever may be the truth touching the issues investigated is not presented by this record for determination; nor is the sufficiency of the evidence on either side to support a verdict, either way on a general submission to the jury, involved. Our only question is: Whether the court correctly acted in sustaining defendants' motion for a verdict in their favor?

The law governing the duty of a court in the disposition of such motions is also correctly stated in the Stevenson opinion in this language: "The rule is universal in this jurisdiction that, before the court is authorized to direct a verdict, it should be prepared to say that, admitting all of the testimony by the one against whom the verdict is directed, and every fair and reasonable inference that might be deducible from it, he has failed to make out his case. Shay v. R. & L. T. R. Co., 1 Bush, 108; United Shakers v. Underwood, 11 Bush, 265, 21 Am. Rep. 214; L. & N. R. Co. v. Howard, 82 Ky. 212; Baumeister v. Markham, 101 Ky. 122, 39 S. W. 844, 41 S. W. 816, 19 Ky. Law Rep. 308, 72 Am. St. Rep. 397; Thompson v. Thompson, 17 B. Mon. [22] 23; Dallam v. Handley, 2 A. K. Marsh. 418; Buford v. L. & N. R. Co., 82 Ky. 286, and L. & N. R. Co. v. Johnson's Adm'x, 161 Ky. 824, 171 S. W. 847. And this rule prevails, although the presiding judge be of the opinion that, if the jury should find adversely to the litigant making the request for such instruction, he would be compelled to sustain his motion for a new trial. Buford v. L. & N. R. Co., supra; Thompson v. Thompson, supra; and Payne Clothing Co. v. Payne, 54 S. W. 709, 21 Ky. Law Rep. 1226."

There is no departure from that rule of practice by any opinion rendered either before or since the rendition of that one. Applying it to the evidence in this case, as we have so briefly outlined it, we are driven to

the conclusion that the court erred in directing the jury to return a verdict for the defendants Overstreet and Wheeler; but we are also of the opinion that it correctly sustained that motion. as to the defendant Mary Frances Harnett, since there was no proof whatever adduced that she was not competent to perform the task she undertook, nor that she administered an excessive amount of the anesthetic or that it was not the proper one.

Wherefore, for the reasons stated, the judgment is affirmed as to the defendant Mary Frances Harnett; but it is reversed as to the defendants Overstreet and Wheeler with directions to set it aside as to them, and for proceedings consistent with this opinion.